## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | **:** | |
| | **:** | |
| **v.** | **:** | **Crim. No. 21-CR-567 (RCL)** |
| | **:** | |
| **MARSHALL NEEFE and** | **:** | |
| **CHARLES BRADFORD SMITH,** | **:** | |
| **also known as Brad Smith,** | **:** | |
| *Defendants.* | **:** | |

### UNITED STATES' UNOPPOSED MOTION TO CONTINUE STATUS CONFERENCE AND TO EXCLUDE TIME UNDER THE SPEEDY TRIAL ACT

The United States of America hereby moves this Court to continue the status conference currently set for September 30, 2021, until mid-December 2021, and further to exclude the time within which a trial must commence under the Speedy Trial Act, 18 U.S.C. § 3161 *et seq*. ("STA") from September 30, 2021, until the continuance date, on the basis that the ends of justice served by taking such actions outweigh the best interest of the public and the defendant in a speedy trial pursuant to the factors described in 18 U.S.C. § 3161(h)(7)(A), (B)(i), (ii), and (iv).   Counsel for the defendants do not oppose this motion.   As further explained below, it is the government's commitment to provide the defendants discovery and to ensure that all arguably exculpatory materials are produced in a comprehensive, accessible, and useable format that, in the main, underlies the government's request to toll the STA.

In support of its motion, the government states as follows:

### FACTUAL BACKGROUND

Defendants Marshall Neefe and Charles Bradford Smith (a.k.a. Brad Smith) are charged by a 15-count indictment arising out of their conduct in connection with the attack on the U.S. Capitol on January 6, 2021 (the "Capitol Breach").   In brief, their alleged conduct to support these

offenses includes conspiring to obstruct an official proceeding (both defendants), obstructing an official proceeding (Neefe), assaulting law-enforcement officers with a dangerous weapon (Neefe), weapons possession on Capitol grounds (both defendants), and unlawful entry on Capitol grounds (both defendants) and inside the Capitol (Neefe).

The defendants were arrested in the Middle District of Pennsylvania on September 13, 2021.   Following initial appearances before magistrate judges in the Middle District of Pennsylvania and the District of Columbia, Neefe was ordered detained pending trial, and Smith was released to home confinement with electronic monitoring.

On September 16, 2021, the government began providing defense counsel with significant case-specific discovery, including: the return of records pertaining to the defendants' Facebook accounts; photos and video clips depicting their conduct on Capitol grounds and inside the Capitol; and Federal Bureau of Investigation ("FBI") reports documenting both defendants' custodial statements and their signed advice-of-rights forms.   The discovery provided as of September 27, 2021, is documented in ECF No. 24.   During their arrests and pursuant to search warrants, the FBI seized multiple electronic devices for both defendants, and the government is awaiting defense counsel's responses to inquiries related to whether there are privileged attorney-client communications on the devices.

On the morning of September 28, 2021, the government received notice that Neefe had retained new counsel.   The government immediately provided the discovery detailed in ECF No. 24 to the new counsel.

In addition, on September 19, 2021, the government filed three memoranda regarding the status of discovery in Capitol cases (as of July 12, 2021, August 23, 2021, and September 14,

2

2021) (ECF No. 18), incorporated herein by reference.   Collectively, these documents are referred to as our "Status Memoranda." The Status Memoranda largely pertained to the production of discovery from voluminous sets of data that the government collected in its investigation of the Capitol Breach cases, among which may be interspersed information the defense may consider material or exculpatory.[1]

**ARGUMENT**

I.      **The Government's Approach to Discovery is Intended to Ensure that All Arguably Exculpatory Materials are Produced in a Comprehensive, Accessible, and Useable Format.**

As a preliminary matter to the government's motion, the government's approach to the production of voluminous discovery, as elaborated in our previously filed Status Memoranda, is consistent with the *Recommendations for Electronically Stored Information (ESI) Discovery Production* developed by the Department of Justice and Administrative Office of the U.S. Courts Joint Working Group on Electronic Technology in the Criminal Justice System.[2]   It is also the generally accepted approach in cases involving voluminous information.   Notably, every circuit to address the issue has concluded that, where the government has provided discovery in a useable format, and absent bad faith such as padding the file with extraneous materials or purposefully hiding exculpatory material within voluminous materials, the government has

---

[1] The materials upon which the Status Memoranda focused include, for example, thousands of hours of video footage from multiple sources (e.g., Capitol surveillance footage, body-worn-camera footage, results of searches of devices and Stored Communications Act ("SCA") accounts, digital media tips, Parler video, and unpublished news footage), and hundreds of thousands of investigative documents including but not limited to interviews of tipsters, witnesses, investigation subjects, defendants, and members of law enforcement.

[2] *See https://www.justice.gov/archives/dag/page/file/913236/download.*

satisfied its *Brady*[3] obligations.   *See United States v. Yi*, 791 F. App'x 437, 438 (4th Cir. 2020) ("We reject as without merit Yi's argument that fulfillment of the Government's obligation under *Brady* requires it to identify exculpatory material."); *United States v. Tang Yuk*, 885 F.3d 57, 86 (2d Cir. 2018) (noting that the "government's duty to disclose generally does not include a duty to direct a defendant to exculpatory evidence within a larger mass of disclosed evidence") (internal citations omitted); *United States v. Stanford*, 805 F.3d 557, 572 (5th Cir. 2015) ("We have previously rejected such 'open file' *Brady* claims where the government provided the defense with an electronic and searchable database of records, absent some showing that the government acted in bad faith or used the file to obscure exculpatory material."); *United States v. Gray*, 648 F.3d 562, 567 (7th Cir. 2011) ("The government is not obliged to sift fastidiously through millions of pages (whether paper or electronic). . . [and] is under no duty to direct a defendant to exculpatory evidence [of which it is unaware] within a larger mass of disclosed evidence.") (quotation marks and citations omitted); *Rhoades v. Henry*, 638 F.3d 1027, 1039 (9th Cir. 2011) (rejecting *Brady* claim on the ground that the defendant "points to no authority requiring the prosecution to single out a particular segment of a videotape, and we decline to impose one"); *United States v. Warshak,* 631 F.3d 266, 297 (6th Cir. 2010) ("As a general rule, the government is under no duty to direct a defendant to exculpatory evidence within a larger mass of disclosed evidence"); *United States v. Skilling*, 554 F.3d 529, 576 (5th Cir. 2009)(same), aff'd in part, vacated in part, remanded, 561 U.S. 358 (2010); *United States v. Pelullo*, 399 F.3d 197, 212 (3d Cir. 2005) ("*Brady* and its progeny . . . impose no additional duty on the prosecution team members to ferret out any potentially defense-favorable information from materials that are so disclosed."); *United States v. Jordan,* 316

---

[3]  *Brady v. Maryland*, 373 U.S. 83 (1963).

F.3d 1215, 1253-54 (11th Cir. 2003) (concluding that the defendant's demand that the government "identify all of the *Brady* and *Giglio* material in its possession," "went far beyond" what the law requires).[4]

## II.    An Ends-of Justice Tolling of the Speedy Trial Act is Warranted.

Given the due diligence the United States continues to apply to meet its discovery obligations, as set forth above and in our Status Memoranda, the government has established that an ends-of-justice continuance under the STA is warranted.

As the Supreme Court has observed, the STA "recognizes that criminal cases vary widely and that there are valid reasons for greater delay in particular cases." *Zedner v. United States,* 547 U.S. 489, 497 (2006). "Much of the Act's flexibility is furnished by § 3161(h)([7]), which governs ends-of-justice continuances." *Id.* at 498. "Congress clearly meant to give district judges a measure of flexibility in accommodating unusual, complex, and difficult cases." *Id.* at 508. And it knew "that the many sound grounds for granting ends-of-justice continuances could not be rigidly structured." *Id.*

The need for reasonable time to address discovery obligations is among multiple pretrial preparation grounds that Courts of Appeals, including our circuit, have routinely held sufficient to grant continuances and exclude time under the STA – and in cases involving far less complexity

---

[4] Even in the unusual cases where courts have required the government to identify *Brady* within previously produced discovery, no court found that this was a substantive right held by the defendant in every case. For example, in *United States v. Saffarinia*, 424 F. Supp. 3d 46 (D.D.C. 2020), in which the court ordered the government to identify any known *Brady* material within its prior productions because the production involved over a million records and defense counsel was working "*pro bono* with time constraints and limited financial resources," the Court acknowledged that "persuasive authority has articulated a 'general rule' that 'the government is under no duty to direct a defendant to exculpatory evidence within a larger mass of disclosed evidence.'" *Id.* at 84 n.15, quoting *Skilling*, 554 F.3d at 576.

in terms of the volume and nature of data, and far fewer individuals who were entitled to discoverable materials.   *See, e.g., United States v. Bikundi*, 926 F.3d 761, 777-78 (D.C. Cir. 2019) (upholding ends-of-justice continuances totaling 18 months in two co-defendant health care fraud and money laundering conspiracy case, in part because the District Court found a need to "permit defense counsel and the government time to both produce discovery and review discovery"); *United States v. Bell*, 925 F.3d 362, 374 (7th Cir. 2019) (upholding two-month ends-of-justice continuance in firearm possession case, over defendant's objection, where five days before trial a superseding indictment with four new counts was returned, "1,000 pages of new discovery materials and eight hours of recordings" were provided, and the government stated that "it needed more than five days to prepare to try [the defendant] on the new counts"); *United States v. Vernon*, 593 F. App'x 883, 886 (11th Cir. 2014) (District court did not abuse its broad discretion in case involving conspiracy to commit wire and mail fraud by granting two ends-of-justice continuances due to voluminous discovery); *United States v. Gordon*, 710 F.3d 1124, 1157-58 (10th Cir. 2013) (upholding ends-of-justice continuance of ten months and twenty-four days in case involving violation of federal securities laws, where discovery included "documents detailing the hundreds financial transactions that formed the basis for the charges" and "hundreds and thousands of documents that needs to be catalogued and separated, so that the parties could identify the relevant ones")(internal quotation marks omitted); *United States v. Lewis*, 611 F.3d 1172, 1177-78 (9th Cir. 2010) (upholding ninety-day ends-of-justice continuance in case involving international conspiracy to smuggle protected wildlife into the United States, where defendant's case was joined with several co-defendants, and there were on-going investigations, voluminous discovery, a large number of counts, and potential witnesses from other countries); *United States v. O'Connor*, 656

6

F.3d 630, 640 (7th Cir. 2011) (upholding ends-of-justice continuances totaling five months and twenty days in wire fraud case that began with eight charged defendants and ended with a single defendant exercising the right to trial, based on "the complexity of the case, the magnitude of the discovery, and the attorneys' schedules").

The government ascertained the defendants' position on a continuance before filing, and their counsel consent to this motion and agree that the computation of time under the STA should be excluded from September 30, 2021, until the date of the continuance.

If the Court is inclined to grant the continuance, the parties would be available for the continued status conference on the following dates:

- December 16-21, 2021 (anytime)

In this case, an approximately 80-day ends-of-justice continuance is warranted under 18 U.S.C. § 3161(h)(7)(A) based on the factors described in 18 U.S.C. § 3161(h)(7)(B)(i)(ii) and (iv). The Capitol Breach is likely the most complex investigation ever prosecuted by the Department of Justice.[5]   As described above, the government has provided the defendants significant case-specific discovery, is in the process of providing additional case-specific discovery, and is also

---

[5] On August 25, 2021, in recognition of the current high rate of transmission of the Delta variant in the District of Columbia, Chief Judge Howell issued Standing Order 21-47, limiting the number of jury trials that may be conducted at one time until at least October 31, 2021.   Further, the Court found that "for those cases that cannot be tried consistent with those health and safety protocols and limitations, the additional time period from August 31, 2021 through October 31, 2021 is excluded under the Speedy Trial Act as the ends of justice served by the continuances to protect public health and safety and the fair rights of a defendant outweigh the best interest of the public and any defendant's right to a speedy trial, pursuant to 18 U.S.C. 3161(h)(7)(A)." (As detailed in Standing order 21-47, the Court had previously found that due to the exigent circumstances created by the COVID-19 pandemic, the time period from March 17, 2020 through August 31, 2021, would be excluded in criminal cases under the STA.)   The effect of the continuing pandemic on the ability to hold jury trials may also support tolling of the STA in this case.

diligently executing its plan to produce voluminous materials in a comprehensive, accessible, and useable format.   Further, the government expects that Neefe's new counsel will need additional time to digest the discovery it began providing to the defendants on September 16, 2021.

## **CONCLUSION**

For the reasons described above, and any others that may be offered at a hearing on this matter, the government moves this Court to continue the status conference currently set for September 30, 2021, to grant an approximately 80-day continuance of the above-captioned proceeding, and further to exclude the time within which a trial must commence under the STA from September 30, 2021, until the continuance date, on the basis that the ends of justice served by taking such actions outweigh the best interest of the public and the defendant in a speedy trial.

Respectfully submitted,

CHANNING D. PHILLIPS
Acting United States Attorney
DC Bar No. 415793

By:   /s/ *Emily A. Miller*
       EMILY A. MILLER
       Capitol Breach Discovery Coordinator
       D.C. Bar No. 462077
       555 Fourth Street, N.W., Room 5826
       Washington, DC 20530
       Emily.Miller2@usdoj.gov
       202-252-6988

By:   /s/ *Seth Adam Meinero*
       SETH ADAM MEINERO
       Trial Attorney
       Detailee
       D.C. Bar No. 00797963
       Seth.Meinero@usdoj.gov
       202-252-5847

By:   /s/ *Courtney Lee*
       COURTNEY LEE
       Assistant United States Attorney
       D.C. Bar No. 241291
       202-252-7650
       Courtney.Lee@usdoj.gov

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on September 28, 2021, I served a copy of this pleading on

the parties to this matter through the court's electronic case files system.


/s/ Seth Adam Meinero
SETH ADAM MEINERO
Trial Attorney
Detailee