**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF COLUMBIA**

|  |  |  |
|---|---|---|
| | : | |
| **UNITED STATES OF AMERICA** | : | |
| | : | **Case No. 21-CR-567 (RCL)** |
| **v.** | : | |
| | : | |
| **MARSHALL NEEFE,** | : | |
| | : | |
| **Defendant.** | : | |
| | : | |

<u>**DEFENDANT'S APPEAL OF DETENTION ORDER**</u>

Defendant Marshall Neefe, ("Mr. Neefe"), by and through undersigned counsel,

respectfully moves this Court to review the decision by the Magistrate Judge from the Middle

District of Pennsylvania to grant the Government's motion for pre-trial detention.  In support

thereof, Mr. Neefe states the following:

**I.**     <u>**BACKGROUND**</u>

**A.**     **Procedural Posture**

On September 13, 2021, Mr. Neefe was arrested in his home in Pennsylvania, on an

arrest warrant issued from the United States District Court for the Middle District of

Pennsylvania in connection with an Indictment charging Mr. Neefe with one count of conspiracy

to obstruct official proceedings, in violation of 18 U.S.C. § 1512(k); on count of obstruction of

an official proceeding and aiding and abetting, in violation of 18 U.S.C. §§ 1512(c)(2), and 2;

one count of civil disorder, in violation of 18 U.S.C. § 231(a)(3); one count of assaulting,

resisting, or impeding certain officers using a dangerous weapon and aiding and abetting, in

violation of 18 U.S.C. §§ 111(a)(1) and (b), and 2; one count of entering and remaining in a

restricted building or grounds, in violation of 18 U.S.C. §§ 1752(a)(1) and (b)(1)(A); one count

of disorderly and disruptive conduct in a restricted building or grounds with a deadly or

dangerous weapon, in violation of 18 U.S.C. §§ 1752(a)(2) and (b)(1)(A); one count of engaging in physical violence in a restricted building or grounds with a deadly or dangerous weapon and aiding and abetting, in violation of 18 U.S.C. § 1752(a)(4) and (b)(1)(A), and 2; one count of disorderly conduct in a Capitol building or grounds, in violation of 40 U.SC. § 5104(e)(2)(D); one count of act of physical violence in the Capitol grounds or buildings, in violation of 40 U.S.C. § 5104(e)(2)(F); and one count of parading, demonstrating, or picketing in a Capitol building, in violation of 40 U.S.C. § 5104(e)(2)(G).

On January 26, 2022, the Government filed a Superseding Indictment adding one count of entering and remaining in a restricted building or grounds, in violation of 18 U.S.C. §§ 1752(a)(1) and (b)(1)(A) and one count of disorderly and disruptive conduct in a restricted building or grounds with a deadly or dangerous weapon, in violation of 18 U.S.C. §§ 1752(a)(2) and (b)(1)(A).

On September 13, 2021, Mr. Neefe had his initial appearance in the Middle District of Pennsylvania, and the Government moved for detention.  Following a detention hearing on September 14, 2021, Magistrate Judge Martin C. Carlson granted the Government's motion for Mr. Neefe's detention pending trial.  Mr. Neefe was committed to the District of Columbia and transferred to the District of Columbia.  On September 16, 2021, Mr. Neefe had his initial appearance in the District of Columbia.

Mr. Neefe now seeks review of his detention before this Honorable Court.

B.      Statement of Facts

On January 6, 2021, Mr. Neefe travelled to the District of Columbia in order to attend a rally in support of former U.S. President Donald J. Trump.  During these demonstrations, President Trump asked his supporters to march towards the U.S. Capitol Building in protest of

the 2020 presidential elections and "fight" on his behalf.  Alongside thousands of other members

of the crowd, Mr. Neefe walked to the U.S. Capitol Building and entered the building.

During these events, the evidence suggests that Mr. Neefe merely walked towards the

Capitol Building, entered the Capitol Building, remained in the rotunda of the Capitol Building

for some period of time, and exited the Capitol Building. Contrary to the Government's

allegations in the Superseding Indictment, Mr. Neefe did not use or carry a large metal sign

frame outside the Capitol Building.  The Government does not allege and there is no evidence to

suggest that Mr. Neefe engaged in any physical altercations with officers of the Metropolitan

Police Department or Capitol Police Officers.  Mr. Neefe's conduct during the events of January

6th was captured by body worn cameras and security cameras within the Capitol Building.

As evidenced by the video recordings, Mr. Neefe did not engage in any confrontations

with anyone.  Furthermore, as can be seen in the images below, Mr. Neefe found himself

underneath a large metal sign frame and only held one hand up while the sign was carried over

his head by other protestors:

*Exhibit 1.2*



His actions do not indicate that he was carrying the sign as alleged by the Government. Other protestors then pushed the sign against MPD police officers.  As can be seen in the images below, Mr. Neefe was underneath the sign and did not use the sign in any way.  He held up his hands to protect himself and, alongside other protestors near him, fell onto the ground when the sign was pushed towards MPD officers over his head.  Notably, Mr. Neefe's back is turned towards the MPD officers, indicating that Mr. Neefe did not make any forward movements towards the officers, but was moved by the crowd and forced onto the ground from his front:

*Exhibit 2.1*



*Exhibit 2.2*



*Exhibit 2.3*



Finally, Mr. Neefe did not cause any property damage or injuries to other individuals and there is no evidence to suggest otherwise.

II.     **ARGUMENT**

In its initial briefing in the Middle District of Pennsylvania, the government argued that Mr. Neefe should be detailed because he was charged with a crime of violence, that he is a danger to any other person or the community, that he is a "flight risk" and that there is a risk that he would "obstruct justice".  No evidence was presented, however, to support any of these arguments.

"In our society liberty is the norm, and detention prior to trial or without trial is the carefully limited exception." *United States v. Salerno*, 481 U.S. 739, 755 (1987).  Under the Bail Reform Act, 18 U.S.C. § 3141 *et seq*., a person awaiting trial on a federal offense may either be released on personal recognizance or bond, conditionally released, or detained. *See* 18 U.S.C. § 3142(a).  The Act establishes procedures for each form of release, as well as for temporary and pretrial detention.  Detention until trial may be imposed when a judicial officer finds one of six circumstances triggering a detention hearing. *See* 18 U.S.C. § 3142(f).  Absent one of these circumstances, detention is not an option. *See*, *e.g., United States v. Ploof*, 851 F.2d 7, 11 (1st Cir. 1988).  Further, assuming a hearing is appropriate, the judicial officer must consider several enumerated factors to determine whether conditions short of detention will "reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. § 3142(g).  The judicial officer may order detention if these factors weigh against release.

A.     **Marshall Neefe Does Not Pose a Danger.**

To detain a defendant on grounds of dangerousness, the government must establish clear and convincing evidence "that no condition or combination of conditions will reasonably assure the safety of any other person and the community," 18 U.S.C. § 3142(f)(2), or, in other words, that pretrial detention is the only means by which the safety of the community can reasonably be

assured. *United States v. Smith*, 79 F.3d 1208, 1209 (D.C. Cir. 1996).  The evidence must prove that the defendant actually poses a danger, not that he does so in theory. *United States v. Patriaca*, 948 F.2d 789 (1st Cir. 1991).  The judicial officer must take into account the nature and circumstances of the offense charged, the weight of the evidence, the history and characteristics of the person, and the nature and seriousness of the danger to any person or the community posed by the person's release. 18 U.S.C. § 3142(g).

Mr. Neefe is a 25-year-old man from Newville, Pennsylvania, where he lives with his fiancé and their 4-year-old son.  Mr. Neefe has lived in Newville for his entire life.  For the past five years, he was employed as a framer on an Amish framing crew in Pennsylvania.  Mr. Neefe has no criminal history.

During Mr. Neefe's detention hearing, the Government argued that Mr. Neefe was an "active" and "violent" participant. Exhibit "A", Transcript from Mr. Neefe's Detention Hearing, at 4:20-21.  It further argued that Mr. Neefe "was one of the individuals who held a large metal framed sign that was essentially used as a wedge and as a means of pushing a line of law enforcement back". *Id.*, at 4:22-24.  The Government also argued that Mr. Neefe made his way into the Capitol with a "homemade weapon". *Id.*, at 5:4-5.  Finally, the Government addressed private communications between Mr. Neefe and other individuals on Facebook and argued that these communications prove Mr. Neefe's "strategizing and planning" of his actions on January 6th and that Mr. Neefe has violent tendencies. *Id.*, at 6:3.

Mr. Neefe now understands that some of his remarks in these social media communications were inappropriate, and he is genuinely sorry for the hurtful comments that he made.  However, some of Mr. Neefe's comments were taken out of context and misrepresented to the Court.  For example, Mr. Neefe did not suggest "dragging somebody by a truck by a rope

or a chain as the best way to get them up a hill". *Id.*, at 11:15-17.  Mr. Neefe's exact comments
were: "You wanna [*sic*] go on a mountain cruise tonight lol … We could get some sleds and tie
them to my truck and haul each other around up on the back roads lol."

Comments such as these are not to be condoned, but it should also be realized that they
contain a certain amount of hyperbole.  In the weeks leading up to January 6th, Mr. Neefe had
temporarily fallen under the influence of a couple of former friends and made comments simply
to fit in, as evidenced by letters from his parents and his fiancé in support of his release from pre-
trial detention. The letters are attached hereto as <u>Exhibit "B"</u>.  He did not have the intent to harm
anyone, and he did not, in fact, harm anyone.  When he realized the seriousness of what had
happened on January 6th, he regretted any participation in the day's events and the social media
comments he had previously posted.  It is also noteworthy that he had no history of violence
before or after that one event.  The letters in support of his release from pre-trial detention further
demonstrate Mr. Neefe's peaceful nature. *See* <u>Ex. "B"</u>.

Furthermore, his actions on January 6th, as reflected by the video evidence in this case,
prove that Mr. Neefe is not a violent person.  Mr. Neefe was a passive participant during the
events on that day and was not carrying any weapons inside the Capitol Building.  He quietly
joined the protests, the march towards the Capitol and made the mistake of walking into the
Capitol Building alongside hundreds of other protestors.  However, Mr. Neefe, at no point in
time, engaged in any physical altercation with anyone outside or inside the Capitol Building.
Even when Mr. Neefe was pushed by other protestors and Capitol Police officers in the rotunda

of the Capitol Building, Mr. Neefe raised his hands or folded his hands on his head or his chest

and remained peaceful, as can be seen here[1]:

*Exhibit 3.1*



*Exhibit 3.2*



---

[1] It is noteworthy that Mr. Neefe is not holding any weapons in his hands as previously argued
by the Government.

*Exhibit 3.3*



*Exhibit 3.4*



*Exhibit 3.5*



The Government has not provided any evidence that shows that Mr. Neefe presents *an identified and articulable threat* to an individual or the community. *See United States v. Salerno*, 481 U.S. 739, 751 (1987). As such, Mr. Neefe does not pose a danger to anyone.

**B.  There is No Serious Risk that Marshall Neefe Will Flee or Obstruct Justice.**

The Government's proposition for detention is further based on 18 U.S.C. § 3142(f)(2)(A) (serious risk that such person will flee) or 18 U.S.C. § 3142(f)(2)(B) (serious risk that such person will obstruct or attempt to obstruct justice, or threaten, injure, or intimidate, or attempt to threaten, injure, or intimidate, a prospective witness or juror). There is not a shred of evidence to support either of those arguments.

Mr. Neefe is not a serious flight risk and there is no serious risk that he will obstruct or attempt to obstruct justice. 18 U.S.C. §§ 3142(f)(2). Mr. Neefe is 25 years old, lived with his fiancé and his son, and is a lifelong resident of Newville, Pennsylvania. Mr. Neefe has always led a peaceful and law-abiding life. He has no connections to any foreign country, and no ability

to flee.  In fact, even after the offense occurred, he remained at his home in Pennsylvania until his arrest.  He has no prior criminal record, and he has no history of violence.

Furthermore, Mr. Neefe has not taken any steps to obstruct justice and there is no basis to assert that he will make any such efforts if this Court orders his release from detention pending trial.

None of this is to suggest that the attack on the Capitol or attempts to obstruct the election of 2020 are excusable; they are not.  However, as the United States Court of Appeals for the D.C. Circuit noted: "the specific circumstances that made it possible, on January 6th, for Munchel and Eisenhart to threaten peaceful transfer of power" no longer exist.  In short, the circumstances leading up to January 6th no longer exist.  This fact alone weighs in favor of release.  *United States v. Munchel*, Case No. 21-3010 (D.C. Circuit March 26, 2021) (appended hereto as Exhibit "C").[2]

### III.   CONCLUSION

For the foregoing reasons, Defendant Marshall Neefe respectfully requests that this Honorable Court convene a hearing to review the decision to detain Mr. Neefe and order his release.

Respectfully Submitted,

*/s/ Dennis E. Boyle*
Dennis E. Boyle, Esquire
Blerina Jasari, Esquire
Boyle & Jasari
1050 Connecticut Ave, Suite 500
Washington, D.C., 20036
Email: dboyle@dennisboylelegal.com

---

[2] In many ways, the conduct of Mr. Munchel and his mother, Ms. Eisenhart, was more serious than the conduct engaged in by Mr. Neefe.  Just like Mr. Munchel, Mr. Neefe entered the U.S. Capitol Building.  However, Mr. Munchel entered the Capitol with a taser, and his mother possessed zip-ties.  If they were ordered released, then Mr. Neefe should be released as well.

bjasari@dennisboylelegal.com
Phone: (202) 430-1900

*Counsel for Defendant*