IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA | : |
| | : |
| v. | : Case No. 21-CR-567 (RCL) |
| | : |
| MARSHALL NEEFE, | : |
| | : |
| Defendant. | : |
| | : |

**DEFENDANT'S REPLY REGARDING APPEAL OF DETENTION ORDER**

Defendant Marshall Neefe, ("Mr. Neefe"), by and through undersigned counsel, respectfully submits this Reply to the Government's Opposition to Mr. Neefe's Appeal of the Detention Order by the Magistrate Judge from the Middle District of Pennsylvania. In its opposition, the Government contends that there is no condition or combination of conditions that would reasonably assure the safety of any other person and the community if Mr. Neefe is released. Opp. at 16. In support thereof the Government cites to Mr. Neefe's statements on Facebook, his actions on January 6, 2021, and his alleged drug abuse. These "facts" that the government cites to do not establish that Mr. Neefe is a threat to the community. Instead, looking at Mr. Neefe's background, even taking into account Facebook posts and his actions of January 6th, it is clear that he is not a threat to the community.

As stated previously in his Motion, Mr. Neefe has no criminal record—notably, before this instance, he has never been charged with a violent crime or with a drug crime. His comments on Facebook, though inappropriate and hurtful, were nothing more than hyperbole to fit into a toxic friend group that Mr. Neefe has since abandoned. A better measure of Mr. Neefe's "violent propensity" is his history before and after January 6th. It is noteworthy that Mr. Neefe has no record, and his family has attested to his peaceful character. Furthermore, during

the eight months that passed between January 6th and Mr. Neefe's arrest, he did not engage in any acts directed at harming anyone.

As it relates to his actions on January 6th, undersigned counsel notes that he was not aware of the video which shows Mr. Neefe holding the metal framed sign outside of the U.S. Capitol Building.  The defense has received voluminous discovery from the Government, including hundreds of hours of video footage, which undersigned counsel is in the process of reviewing.[1]  It was not undersigned counsel's intention to mislead the Court regarding the circumstances of Mr. Neefe's interaction with the sign.

Nevertheless, Mr. Neefe's holding of the sign does not materially change anything.  Mr. Neefe touched the sign, but so did dozens of other people, including Mr. Neefe's co-defendant Charles Bradford Smith (also known as "Brad Smith") ("Mr. Smith") who has been released pending trial and has been placed on home confinement. [ECF 22].  It is unclear how many, if any, of the other participants depicted in that video have been detained pending trial.

I.      **ARGUMENT**

        **A.      Mr. Neefe Requests a Review of his Detention Order.**

Pursuant to 18 U.S.C. § 3145(b), "[i]f a person is ordered detained by a magistrate judge … the person may file, with the court having original jurisdiction over the offense, a motion for revocation or amendment of the order." 18 U.S.C. § 3145(b).  "The motion shall be determined promptly." *Ibid*.  The statute, however, does not define "promptly".  The Act's procedural safeguards serve the important purpose of protecting the liberty interests of presumably innocent pretrial detainees. *United States v. Al-Azzawy*, 768 F.2d 1141, 1145 (9th Cir. 1985).  In enacting

---

[1] As of the time of the filing of this Motion, the Government indicated that it planned to mail additional discovery to undersigned counsel which he has not yet received.

the provisions for pretrial detention under the Act, "Congress recognized the severe deprivation of the liberty of one not yet proven guilty, and therefore presumed innocent, who is detained prior to trial. As a result of this recognition, it took great care to set up adequate procedural safeguards so as to guarantee fairness to those against whom pretrial detention is sought." *United States v. Hurtado*, 779 F.2d 1467, 1484 (11th Cir. 1985). The legislative history of section 3145(b) reveals that the addition of a time mandate, or "promptness" requirement, was "designed … to facilitate speedy review if relief is to be effective." S. Rep. No. 98-225, 98th Cong., 2d Sess. 1, 29 n. 92, *reprinted in* 1984 U.S. Code Admin. News 3182, 3212 n. 92. Effective review of pretrial detention orders necessarily entails a speedy review in order to prevent unnecessary and lengthy periods of incarceration on the basis of an incorrect magistrate's decision. *Al-Azzawy*, 768 F.2d at 1145.

Here, the Government contends that Mr. Neefe filed his motion months after the Government produced videos depicting Mr. Neefe with the metal sign frame, and as such has been filed too late. *See* Opp. at 15-16. Because the "promptness" requirement in section 3145(b) was designed to protect the liberty interests of presumably innocent pretrial detainees, and not the Government's interests in seeking pretrial detention, the Government's argument should fail on that ground alone.

There are two other factors that explain the defense delay in contesting pre-trial incarceration. First, at the time Mr. Neefe was originally arrested, the defense anticipated a relatively prompt resolution of the charges. However, Mr. Neefe had already spent approximately six months in incarceration, and the government has yet to engage in any discussions concerning a final resolution of the case, and no one knows how much more time will pass before the government engages in substantive negotiations. It is believed that Mr.

Neefe may have already done more time than he is likely to be sentenced to, even if he is convicted. While Mr. Neefe was serving time that would ultimately be credited to any sentence he ultimately receives, it made sense for him not to contest pre-trial incarceration. Now that he may have served more than the sentence he may ultimately receive, review of incarceration is much more important.

Furthermore, the Government regularly shares new voluminous discovery with undersigned counsel. Most recently, the Government indicated that it is in the process of mailing additional discovery to undersigned counsel which he has not yet received. Undersigned counsel believed that the Government had significant evidence in support of its allegations and has attempted to wait—probably for too long—to review the discovery prior to determining if a motion for review of Mr. Neefe's detention order is appropriate. However, as new discovery has become available to undersigned counsel, it has become clear that the Government's allegations against Mr. Neefe are overstated and that Mr. Neefe is not a candidate for pretrial detention. Mr. Neefe should be released pending trial.

**B.      Home Confinement Assures the Safety of Other Persons and the Community.**

In its Opposition, the Government contends that there is no condition or combination of conditions that would reasonably assure the safety of any other person and the community if Mr. Neefe is released because Mr. Neefe has been charged with a crime of violence, because he allegedly engaged in extensive prior planning before arriving at the Capitol, because of his "movements" during the riot, and because Mr. Neefe's actions allegedly demonstrated a dangerous hostility to law enforcement. *See* Opp. at 16-18. Specifically, the Government puts emphasis on Mr. Neefe's actions on January 6th, as well as comments Mr. Neefe made on social media and his alleged drug abuse and access to firearms.

As previously noted, Mr. Neefe held the metal framed sign alongside dozens of other people, including Mr. Neefe's co-defendant, Mr. Smith, after the sign was carried over his head and towards the Metropolitan Police Officers by other protestors. Once the sign was over his head, Mr. Neefe held the sign with one hand and let go of it once other people started pushing him from behind. Notably, a review of the video indicates that Mr. Neefe let go of the sign and attempted to remove himself from the scene while other protestors continued to push the sign towards the police officers. Mr. Neefe was not the instigator, and he did not materially contribute to the pushing of the sign towards the officers. He was one amongst many other protestors—presumably, none of whom have been detained pretrial.

Furthermore, in its Opposition, the Government states that Mr. Neefe relayed to FBI agents during an interview after his arrest that he "was in the rotunda and was part of a group that traveled to a side hallway." He "then got knocked over and lost the homemade club he had which was stapled to a United States flag." Opp. at 13 n. 6. It is unclear what exactly Mr. Neefe said during his interview, but the video evidence from inside the U.S. Capitol Building does not show that Mr. Neefe had a homemade club.

As it relates to his Facebook activity, Mr. Neefe deeply regrets the hurtful comments he made. He allowed himself to be influenced by a toxic friend group and said things which were insensitive and cruel only to fit in. Ironically, this "toxic friend" actually made many of the comments with which Mr. Neefe agreed, yet he remains free on electronic home detention. As Mr. Neefe readily admits, his comments were wrong. However, Mr. Neefe has never acted on any of these comments. In fact, his family describes him as a kind and caring person who could never hurt anybody, as evidenced by letters written by his parents and his fiancé in support of his motion. *See* Appeal, Ex. "B".

Moreover, the Government correctly notes that Mr. Neefe has no criminal history. *See* Opp. at 19. Notably, Mr. Neefe has never been charged with a drug offense. The government speculates that Mr. Neefe is a drug user based, again, on Facebook posts. While the nature of Mr. Neefe's drug use in unknown, what is clear is that it has never resulted in any violent activity, and it has never attracted the attention of law enforcement. Unfortunately, many people use illegal drugs. According to a recent poll, 49% of Americans have tried marijuana.[2] Millions have tried other illegal substances. This is not to suggest that the use of illegal narcotics is acceptable because many people do it; it is not. What it does show is that the vast majority of people who use illegal drugs do not engage in violent activity.

Furthermore, any risk that Mr. Neefe might use illegal drugs could be ameliorated through mandatory drug testing.

Other factors pertaining to Mr. Neefe's history and characteristics heavily weigh in favor of Mr. Neefe's pretrial release: Mr. Neefe's family describes Mr. Neefe as a peaceful person; Mr. Neefe is engaged to be married and has a four-year-old son; Mr. Neefe has lived in Newville, Pennsylvania, his entire life and has strong community ties; Mr. Neefe has been employed throughout his adult life; and Mr. Neefe has no criminal history. *See* 18 U.S.C. § 3142(g).

Finally, all conversations the Government cites to in its Opposition include comments Mr. Smith made to Mr. Neefe. In fact, it appears that Mr. Smith, and not Mr. Neefe, was the instigator in most of these conversations. Yet, Mr. Smith remains on home confinement pending trial, and Mr. Neefe is incarcerated. There is no reasonable explanation for the Government's

---

[2] *See* https://www.usnews.com/news/national-news/articles/2021-08-17/record-high-more-americans-are-trying-marijuana-gallup-poll-finds.

disparate treatment of Mr. Smith and Mr. Neefe in this instance.  Mr. Neefe should be released pending trial.

## II.     CONCLUSION

For the foregoing reasons, Defendant Marshall Neefe respectfully requests that this Honorable Court hold a hearing to review the decision to detain Mr. Neefe and order his release on electronic home detention.

                                      Respectfully Submitted,

                                      */s/ Dennis E. Boyle*
                                      Dennis E. Boyle, Esquire
                                      Blerina Jasari, Esquire
                                      Boyle & Jasari
                                      1050 Connecticut Ave, Suite 500
                                      Washington, D.C., 20036
                                      Email: dboyle@dennisboylelegal.com
                                                     bjasari@dennisboylelegal.com
                                      Phone: (202) 430-1900

                                      *Counsel for Defendant*