UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>**MARSHALL NEEFE,**<br><br>*Defendant.* | Case No. 1:21-cr-567-RCL |

## MEMORANDUM OPINION

Defendant Marshall Neefe was arrested on September 13, 2021, for his alleged participation in the attack on the United States Capitol on January 6, 2021. Def.'s Mot. 1, ECF No. 42. He is charged with twelve counts of a fourteen-count superseding indictment, including multiple felonies. ECF No. 39. After his arrest in the Middle District of Pennsylvania, a magistrate judge determined that no condition or combination of conditions of Neefe's release would reasonably assure the safety of any other person and the community. ECF No. 9 at 12. Now, Neefe appeals this decision and moves to be released pending trial. Def.'s Mot. The government opposes, Gov. Opp'n ECF No. 46, and Neefe replied, Def.'s Reply, ECF No. 47. The Court held a hearing and heard additional arguments on February 23, 2022, by both parties. Upon consideration of the motion, opposition, reply, and arguments set forth at the hearing, the Court will **DENY** Neefe's motion by separate order. Neefe shall remain detained pending trial.

Below, the Court sets out the written findings and reasons underlying its Order. *See* 18 U.S.C. § 3142(i)(1) (requiring that a detention order "include written findings of fact and a written statement of the reasons for the detention").

## I. BACKGROUND

**A. Neefe's Actions Leading Up To January 6, 2021**

The government proffers the following factual allegations in support of its opposition to Neefe's release. The United States Presidential election occurred on November 3, 2020. Gov. Opp'n 3. Just one day after the election, Neefe messaged his alleged co-conspirator, Charles Bradford Smith, about potential plans to travel to D.C. *Id.* at 5. "I'm getting ready to storm D.C.," Neefe wrote on Facebook on November 4, 2020. *Id.* "Seriously tho if biden wins theres a good change ill do something for the better of man."[1] *Id.* And in response to Smith's statement that the country needs to split up, Neefe replied "Why shouldnt we be the ones to kick it off?" *Id.*

In the weeks that followed, Neefe began plotting his January 6 trip to Washington, D.C. in earnest. After hearing from Smith that "the Don himself" requested supporters to rally in D.C. on January 6, Neefe expressed interest in attending and stated that he "really wanna crack some commi[e] skulls." *Id.* at 6. So Neefe and Smith did not intend to rally empty-handed. The men discussed bringing "batons" with them to Washington. *Id.* Neefe fashioned a special wooden club that he christened "The Commie Knocker" and proudly displayed to his friends on Facebook. *Id.* at 7. "Getting prepped for the 6th lol . . . Going to D.C. to make sure them lil bitches don't burn down the city when trump is announced as president," he declared in a group Facebook message accompanied by a picture of his club. *Id.*

Smith and Neefe made plans to attend another rally in D.C. on November 14, 2020. Gov. Exh. 1-RR. Neefe noted that he was "[b]ringing his big boi," an apparent reference to his Ka-Bar

---

[1] The Court has presented Neefe's messages as they appear.

knife.[2] *Id.* Neefe also "hope[d] [he] g[o]t to smack around a few commies," *id.*, and practiced what "line" he would use in a confrontation: "I've killed 5 chickens with this blade, lets make it 6." *Id.*

During the same period that Neefe solidified his plans to travel to the Capitol with his wooden club, he frequently made violent and racist comments. On December 1, 2020, Neefe and Smith discussed their appreciation of fascism—specifically, German fascism—and Neefe expressed a desire for "commies" to be murdered. Gov. Opp'n 26. "These sick fucks really do need to start getting turned into a mist," he stated on Facebook. *Id.*

Less than a month before attending the Capitol riot, Neefe messaged—apparently in jest—about a murder and lynching. *Id.* He shared a photo of an outdoor hill to a group of Facebook friends with the following exchange:

> Neefe: Out here lynchin that n****r uncle ben as we speak
> Unnamed Facebook User: What tree you using?
> Neefe: Who said it has to be a tree
> Neefe: Rope on my bumper works wonders
> . . .
> Neefe: Anybody wanna use his body as a sled and ride him up the mountain?

*Id.* And Neefe's hateful, violent rhetoric was not limited to "commies" or Black people. On December 15, 2020, after the Electoral College formalized the Presidential election results, Neefe stated on Facebook, "Looks like [then-Senate Majority Leader Mitch] mcconnel needs a bullet in the head." *Id.* at 27.

The government also emphasizes that during this period of violent rhetoric and planning, Neefe was routinely doing "dabs"—i.e., smoking marijuana concentrate—and at least once used lysergic acid diethylamide, commonly known as LSD or acid. *Id.* at 21–24. All the while, Neefe possessed both firearms and ammunition. *Id.* at 24.

---

[2] A Ka-Bar knife is a large combat knife.

### B. Neefe's Actions On And After January 6, 2021

Neefe's planning culminated when he arrived at the Capitol on January 6, 2021, armed with "The Commie Knocker." *Id.* at 8. Videos depict him walking towards the Capitol as Smith jeers in the background, "We are literally storming the Capitol. The gate—this whole area is blocked off to the public. We're saying, 'Fuck it!' *Sic semper tyrannis*, bitch. Down with tyrants!" *Id.* After Smith's statements, the camera pans to Neefe as he raises "The Commie Knocker," with a flag attached, over his head. *Id.* at 9.

Once Neefe made his way deeper into the Capitol grounds, he was part of a group of rioters who helped ram what the government describes as a "large metal sign" into a line of Metropolitan Police Department ("MPD") officers attempting to secure the West Front Plaza of the Capitol. *Id.* This ramming, and Neefe's participation, is captured by multiple camera angles. Videos show Neefe standing near the line of MPD officers when another group of rioters began to carry a metal sign towards the police line. *See* Body-Worn Footage, Gov. Exh. 1-M. The sign appeared to be at least ten feet by ten feet with casters the size of a grown man's head. *Id.* United States Capitol Police Officer Nikolas Scharkopf, who was present in the line of officers, noted that the frame of the sign could have knocked someone unconscious or "split someone's head open." Gov. Suppl. 2, ECF No. 53. As the metal sign approached, Neefe grasped it and helped to guide and push the sign towards the MPD officers. *See* Gov. Exh. 1-U. He walked with the sign, helping to turn it, before he and other rioters rammed it into the line of police. *Id.* Neefe turned back only after the sign had reached the line of MPD officers and the officers used pepper spray to repel the riotous crowd. *Id.* Neefe eventually entered the Capitol building and the Rotunda itself. Gov. Opp'n 11. As officers attempted to clear the rioters who had violently breached the Capitol, Neefe impeded their efforts by crossing his arms and remaining motionless. *Id.*

4

Apparently proud of his actions, Neefe boasted of his crimes that night on Facebook. To one Facebook friend he noted, "I'm bringing a gun next time idec." *Id.* at 12. He expounded:

> Its only going to get more violent . . . Today was total pussy shit dude . . . If I had it my way every cop who hurled a baton or maced on of us would be lined up and put down.

*Id.* In a texting conversation with his mother[3] the next day, January 7, 2021, he discussed covering up his crimes and laying low:

> Neefe: So far no footage or photo of me
> Neefe: Brad [Smith] deleted everything and i deleted all my social media
> Neefe: Smart phone goes away next
> Mom: I do hope when you are inside there was no cameras with your face especially when you are pissing on the stairs or punching the cop

Gov. Exhs. 1-LL & 1-MM.

Following his arrest on September 13, 2021, Neefe was read his *Miranda* rights and voluntarily spoke with the Federal Bureau of Investigation ("FBI"). Gov. Opp'n 12. There, he admitted to additional violence: that he "pushed against the police at a door" to gain entry to the Capitol. *Id.* at 13. Neefe expressed remorse for his actions to the FBI, and denounced QAnon conspiracy theories. *Id.* He also admitted to using cannabinoids weekly up until his arrest, though he did not report the LSD discussed above. *Id.*

### C. Procedural Background

Immediately after his arrest, Neefe was brought before Magistrate Judge Martin C. Carlson in the Middle District of Pennsylvania. *Id.* at 2. At that initial appearance, the government moved for Neefe's detention pending trial pursuant to 18 U.S.C. §§ 3142(f)(1)(A) and (f)(1)(E). *Id.* A

---

[3] These text conversations occurred with a phone contact titled "Mom." Gov. Exhs. 1-LL & 1-MM. The government represented at the motion hearing that phone number associated with the "Mom" phone contact matches the phone number assigned to Neefe's mother.

5

detention hearing was held the next day, and at the hearing's conclusion, Magistrate Judge Carlson granted the government's motion for detention pending trial. *Id.* During the detention hearing, he stated:

> Mr. Neefe, it has been my sad duty and responsibility in a number of cases arising out of the events of January 6th to make the kind of predictive exercises that the law calls for in terms of bail or detention decisions. I have seen all too many individuals come before me who have been charged in connection with an assault on the institutions of this democracy. I have seen all too many individuals who engaged in conduct antithetical to the ideals upon which this nation is founded. I've given all those individuals who the law and the Constitution demands, which is careful, individualized considerations of their cases, and I must tell you, Mr. Neefe, that yours is the most dark and disturbing riddle that I have seen among the defendants who have come before me . . . . You are, sir, the most disturbing defendant I have seen among those charged in connection with this incident.

Transcript of Detention Hearing 38:11–40:4, ECF No. 42-1.

## II.   LEGAL STANDARDS

### A. Pretrial Detention Under the Bail Reform Act

The Bail Reform Act, 18 U.S.C. § 3141 *et seq.*, authorizes the detention of a defendant pending trial in two limited scenarios. In the scenario relevant here, the government may seek a defendant's pretrial detention if the charged offense(s) fall into one of five enumerated categories, which include a "crime of violence"[4] or a felony that "involves the possession or use of . . . any other dangerous weapon." 18 U.S.C. § 3142(f)(1)(A), (f)(1)(E).

If the Bail Reform Act authorizes pretrial detention, the Court must hold a hearing to determine whether there are any conditions of release that would reasonably assure the appearance

---

[4] A "crime of violence" for purposes of the Bail Reform Act is (A) "an offense that has as an element of the offense the use, attempted use, or threatened use of physical force against the person or property of another," (B) "any other offense that is a felony and that, by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense," or (C) "any felony under chapter 77, 109A, 110, or 117." 18 U.S.C. § 3156(a)(4).

of the defendant as required and the safety of any other person and the community. *Id.* § 3142(f). Both the government and the defendant have the opportunity to offer evidence or proceed by proffer. *United States v. Smith*, 79 F.3d 1208, 1210 (D.C. Cir. 1996) (per curiam). After these presentations, if the judicial officer finds that "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community," the judicial officer "shall order" the person detained pending trial. § 3142(e)(l). A finding that no condition or combination of conditions would reasonably assure the safety of any other person and the community must be supported by clear and convincing evidence, § 3142(f), while a finding that no conditions would reasonably assure the defendant's appearance as required must be supported only by a preponderance of the evidence, *United States v. Xulam*, 84 F.3d 441, 442 (D.C. Cir. 1996).

In some situations not relevant here, the Bail Reform Act establishes a rebuttable presumption of detention. *See* § 3142(e). But in all other situations, like here, the Bail Reform Act requires judicial officers to consider four factors determine whether there are conditions that would reasonably assure the defendant's appearance and the public's safety:

> (1) the nature and circumstances of the offense charged, including whether the offense is a crime of violence, a violation of Section 1591, a Federal crime of terrorism, or involves a minor victim or a controlled substance, firearm, explosive, or destructive device
>
> (2) the weight of the evidence against the person
>
> (3) the history and characteristics of the person, including—
>
>> (A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings
>>
>> (B) whether, at the time of the current offense of arrest, the

>   person was on probation, on parole, or on other release
>   pending trial, sentencing, appeal, or completion of sentence
>   for an offense under Federal, state, or local law; and
>
> (4) the nature and seriousness of the danger to any person or the
>     community that would be posed by the person's release.

§ 3142(g).

For pretrial detention on the basis of the defendant's dangerousness, the government must "prove[ ] by clear and convincing evidence that an arrestee *presents an identified and articulable threat* to an individual or the community." *United States v. Munchel*, 991 F.3d 1273, 1280 (D.C. Cir. 2021) (quoting *United States v. Salerno*, 481 U.S. 739, 751 (1987)). This inquiry is "forward-looking." *United States v. Hale-Cusanelli*, 3 F.4th 449, 456 (D.C. Cir. 2021). But the required identified threat need not be a specific threat of *violence*—"[a] person [may] be deemed a danger to the community sufficient to justify detention even without posing a threat of committing violence in the future." *Id.*

A review of a magistrate judge's decision to detain a defendant pursuant 18 U.S.C. § 3142 is *de novo. United States v. Karni*, 298 F. Supp. 2d 129, 130 (D.D.C. 2004).

### III.   DISCUSSION

Because Neefe is charged with, among other things, assaulting an officer with a dangerous weapon (Count 4), engaging in physical violence with a dangerous weapon (Count 10), and committing four other felonies with a dangerous weapon, the government may seek detention under both 18 U.S.C. §§ 5142(f)(1)(A) and (f)(1)(E). *See* 18 U.S.C. § 111(a)(1), (b); *id.* § 1752(a)(1), (b)(1)(A); *id.* § 1752(a)(2), (b)(1)(A); *id.* § 1752(a)(4), (b)(1)(A), (b)(2); *id.* § 1754(a)(4), (b)(1)(A). Neefe did not dispute that the government may seek his detention pending trial.

This Court must accordingly consider whether any condition or combination of conditions exist that will reasonably assure Neefe's appearance as required and the safety of the community. While the government did assert that Neefe is a flight risk, most of its evidence and argument focused on Neefe's dangerousness. This Court finds by clear and convincing evidence that no condition or combination of conditions will reasonably assure the safety of the community, and so will not address whether Neefe is a flight risk.

### A. The Nature And Circumstances Of Neefe's Charged Offenses

Neefe's numerous alleged offenses are serious. He is charged with conspiring to travel to Washington, D.C., armed with weapons, to obstruct the certification of the Electoral College vote. ECF No. 39 at 5–6. Responding to what he viewed as a call to action from former-President Donald Trump, Neefe prepared for violence at the Capitol and fashioned "The Commie Knocker," his homemade wooden club, specifically for January 6. Gov. Opp'n 6–7.

Once he arrived at the Capitol, Neefe made good on his threats of violence by bludgeoning a line of MPD officers with a large metal structure. *Id.* at 6, 9–10. He also admitted to the FBI that he pushed through a line of officers to gain entrance to the Capitol building itself. Gov. Exh. 1-JJ. While his obstruction charges are no doubt serious offenses, his assault on police officers with a dangerous weapon make him unique among other January 6 defendants. The D.C. Circuit has held that "those who actually assaulted police officers and broke through windows, doors, and barricades, and those who aided, conspired with, planned, or coordinated such actions, are in a different category of dangerousness than those who cheered on the violence or entered the Capitol after others cleared the way." *Munchel*, 991 F.3d at 1284. "In so holding, *Munchel* drew categorical distinctions between the violent and non-violent January 6 participants explaining that the former are categorically more dangerous." *United States v. Fairlamb*, 535 F. Supp. 3d 30, 39 (D.D.C.

9

2021). Neefe extensively planned for violence, including by bringing a weapon, and then assaulted police officers at the Capitol—placing him undoubtedly in the more dangerous category.

Neefe attempts to characterize himself as a "passive participant during the events" of January 6. Def.'s Mot 8. He even contends that he was not carrying and maneuvering the large metal sign as rioters repeatedly thrust it into the line of cops, as the government alleges. *Id.* 4. Neefe would apparently have the undersigned disbelieve his own eyes, as Neefe's actions were plainly caught on camera. Gov. Exhs. 1-Q & 1-U. Far from a passive participant, Neefe headed to the Capitol with a weapon and an expressed intent of committing violent acts—and he followed through. The nature and circumstances of Neefe's alleged offenses weigh firmly in favor of his detention.

In reply, Neefe makes a peculiar statement that downplays the seriousness of his charged offenses. Neefe avers that he "may have already done more time than he is likely to be sentenced to, even if he is convicted." Def.'s Reply 4. The Court must disabuse Neefe of that notion. Neefe has been detained nearly seven months. Other defendants convicted of assaulting officers on January 6 have each been sentenced to a minimum of forty-one months in prison. *See* Judgment, *United States v. Nicholas Languerand*, No. 1:21-cr-353 (JDB) (D.D.C. Jan.28, 2022), ECF No. 40 (forty-four months); Judgment, *United States v. Robert Palmer*, No. 1:21-cr-328 (TSC) (D.D.C. Jan. 12, 2022), ECF No. 35 (sixty-three months); Amended Judgment, *United States v. Devlyn Thompson*, No 1:21-cr-461 (RCL) (D.D.C. Jan. 4, 2022), ECF No. 40 (forty-six months); Judgment, *United States v. Scott Fairlamb*, No. 1:21-cr-120 (RCL) (D.D.C. November 10, 2021), ECF No. 57 (forty-one months). Neefe identifies no comparable case—and the Court has found none—to support his assertion that he is "likely" to receive less than seven months imprisonment

if he is convicted for his alleged violent behavior on January 6. The crimes alleged here are serious. So is the potential punishment.

### B. The Weight Of The Evidence Against Neefe

The weight of the evidence against Neefe is heavy. The government provided multiple videos showing Neefe's assault with the large metal sign, as well as Facebook messages that illustrate his planning process leading up to January 6. Other images of Neefe from January 6 show him with "The Commie Knocker" as he storms the Capitol. Gov. Opp'n 9.

This Court has repeatedly recognized that courts in other Circuits have cautioned that the proper analysis here is to weigh the evidence of the defendant's dangerousness, not the evidence of defendant's guilt. *See United States v. Gassaway*, No. 1:21-cr-550 (RCL), 2021 WL 4206616, at *4 (D.D.C. Sept. 16, 2021) (citing *United States v. Taylor*, No. 1:21-cr-392 (RCL), 2021 WL 3552166, at *5 (D.D.C. Aug. 11, 2021)). But the evidence in question is probative *both* of Neefe's dangerousness and his guilt. Neefe has proven that he has the will to follow through on his violent threats. So under either interpretation of this factor, the weight of the evidence supports detention.

### C. Neefe's History And Characteristics

The third factor also weighs in favor of detaining Neefe until trial. When considering Neefe's history and characteristics, the Court must take into account available information regarding Neefe's "character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings." 18 U.S.C. § 3142(g)(3)(A).

Both at the hearing and in the defendant's motion, defense counsel noted that Neefe lives in his hometown with his fiancé and their four-year-old son, has a steady history of employment,

and has no criminal history. Def.'s Mot. 7. Neefe submitted letters from his family in support of his pretrial release, who describe him as a peaceful, law-abiding citizen. *See* ECF No. 42-2. Strong familial and community ties weigh in favor of release. *Xulam*, 84 F.3d at 443. So too does Neefe's lack of criminal history. However, Neefe's family ties, employment, and lack of criminal history are heavily outweighed by other, more troubling aspects of his history and characteristics. Further, evidence on the record of Neefe's texts with his mother following the January 6 riot raises questions of her candor in her letter, given she apparently knew that Neefe "piss[ed] on the stairs," "punch[ed] the cop," and hoped that he would evade identification. Gov. Exh. 1-MM.

To start, Neefe has a recent history of espousing violent and racist views. He has "joked" about lynching Black people, wished violence on then-Majority Leader Mitch McConnell, and hoped that "commies" would be turned "into a mist." Gov. Opp'n 26–27. He expressed a desire for civil war and wondered aloud why he should not "kick it off" himself. *Id.* at 5. To be sure, Neefe cannot be "held because of his political beliefs," no matter how abhorrent. *Taylor*, 2021 WL 3552166, at *6. But the Court *can* consider such beliefs if they are probative of "his motive or intent to engage in dangerous conduct." *Id.* And in the instances above, not only did Neefe repeatedly invoke the potential of violent conflict, he followed through—he stormed the Capitol, armed with "The Commie Knocker." These were not idle threats. Such language can properly be considered as probative evidence of his dangerousness. *See United States v. Hale-Cusanelli*, 3. F4th 449, 457 (D.C. Cir. 2021) (explaining that the district court properly relied upon a defendant's "extensive history of statements condoning violence against those of other races and religions" and instances of violent conduct that implicate those beliefs).

Second, the government proffered evidence indicating that Neefe attempted to destroy evidence of his attendance at the Capitol riot. He "deleted all [his] social media" and planned to

discard his smart phone within a day of his alleged crimes. Gov. Exh. 1-LL. "The fact that he destroyed evidence is inconsistent with the behavior of someone trying to legitimately and honestly clear their name; instead, it is consistent with someone trying to avoid prosecution." *United States v. Sabol*, 534 F. Supp. 3d 58, 82 (D.D.C. 2021). Moreover, it mitigates the argument that Neefe's lack of public rhetoric or actions after January 6, 2021, indicate his remorsefulness. Instead, these appear to be the actions of a man laying low.

Third, as the government highlights, Neefe has an extensive history of drug use coupled with the ownership of guns and ammunition. Gov. Opp'n 22–24. While neither of these factors are necessarily probative of dangerousness alone, together they counter Neefe's characterization of his life as "peaceful and law-abiding." Def.'s Mot. 11. Under the Controlled Substances Act, anyone "who is an unlawful user of or addicted to any controlled substance" is prohibited from possessing any firearm or ammunition. 18 U.S.C. § 922(g)(3). This cuts against Neefe's "law-abiding" nature.

In total, Neefe's history and characteristics weigh in favor of pretrial detention.

### D. The Nature And Seriousness Of The Danger Posed By Neefe's Release

Next, the Court must consider the "nature and seriousness of the danger to any person or the community that would be posed by the person's release." 18 U.S.C. § 3142(g)(4). The D.C. Circuit has explained that this showing requires the Court to find, by clear and convincing evidence, that the defendant "presents an identified and articulable threat to an individual or the community." *Munchel*, 991 F.3d at 182 (quoting *Salerno*, 481 U.S. at 751).

The Court has already explained, when discussing the first and third § 3142(g) factors, how Neefe planned to attend a violent protest, armed with a self-made weapon, attended that protest, and violently assaulted police officers there. The Court has detailed how Neefe expressed a desire

to "kick [] off" a civil war, then actually participated in a violent uprising aimed at interfering with the functioning of government and stopping the peaceful transfer of power. Gov. Opp'n 5. In other words, Neefe not only made violent threats. His threats were paired with violent actions.[5]

With that history in mind, when Neefe says that "if [he] had it [his] way[,] every cop who hurled a baton or maced on[e] of us would be lined up and put down," this Court takes that seriously. Gov. Exh. 1-GG. When Neefe says that "[i]ts only going to get more violent," this Court believes him. Gov. Exh. 1-GG. And when Neefe says that he is "bringing a gun next time," this Court cannot ignore it. Neefe has repeatedly expressed an intent to commit more violence. He has followed through in the past. And as this Court has recognized, past violence can offer "some of the strongest evidence of his dangerousness." *United States v. Fairlamb*, 535 F. Supp. 3d 30, 42 (D.D.C. 2021).

Neefe makes much of the D.C. Circuit's recognition that "the specific circumstances that made it possible, on January 6th, for [defendants Eric Munchel and Lisa Eisenhart] to threaten the peaceful transfer of power" no longer exist. *Munchel*, 991 F.3d at 1273. But Munchel and Eisenhart's circumstances were nothing like Neefe's. Munchel and Eisenhart, the Circuit noted, attended the riot at the Capitol but "did not engage in any violence" nor participate in "planning and coordinating the activities." *Id.* It was thus only the "presence of the large group" at the Capitol that allowed them to obstruct democracy. *Id.* Neefe, on the other hand, *did* engage in violence and

---

[5] In his filings, Neefe repeatedly brings up the fact that his co-conspirator Smith has been released on house arrest pending trial to highlight the "disparate treatment" of the two men. Def.'s Reply 2; Def.'s Reply to Gov. Suppl. at 2, ECF No. 54. But Neefe and Smith's circumstances are not identical. The government sought to detain Neefe pending trial; it did not seek to detain Smith. Neefe actually entered the Capitol building, allegedly with a deadly weapon; Smith did not. Superseding Indictment ¶¶ 30, 42, ECF No. 39. Neefe announced he wanted to "bring[] a gun next time," an articulable threat of future violence, *id.* ¶ 34; Smith made no such statements. This last factor in particular accounts for the disparity between the two men.

14

*did* coordinate attendance with specially made weapons. Furthermore, he has made clear that he would come back again. Neefe is in no way similar to Munchel and Eisenhart.

Given this clear threat of additional violence towards members of Congress, the MPD officers that defended the Capitol, and others who disagree with his political beliefs, the Court does not see how even home confinement could ensure the safety of any person in the community. Further, given Neefe's "brazen actions in front of law enforcement officers, and his lack of demonstrated remorse for his actions," the Court cannot even find that Neefe would comply with the conditions of his release to begin with. *United States v. Fairlamb*, 535 F. Supp. 3d 30, 46 (D.D.C. 2021). Neefe clearly does not struggle with breaking the law, even violently.

This Court finds that Neefe presents an identified and articulable threat, and that no condition or combination of conditions of release ensure the safety of the community.

\*\*\*

Some members of the public and even a few members of Congress retain the impression that peaceful political protestors are being held in jail pending trial. Neefe's detention disproves that delusion. Neefe is detained not because of his beliefs, but because of his alleged violent actions and his expressed intent to engage in violent activity again. When faced with evidence that a defendant poses an articulable threat, the Court has the power to disable that threat with pretrial detention. That is why Neefe will remain detained pending trial. The nature and the character of the charged offenses, the weight of the evidence, Neefe's history and characteristics, and the danger that Neefe poses to the community all support pretrial detention.

## IV.   CONCLUSION

Based on the foregoing, the Court will **DENY** Neefe's motion for appeal of his detention order and for release by separate order.

Date: __3/9/22__

Royce C. Lamberth
United States District Judge