1          IN THE UNITED STATES DISTRICT COURT
             FOR THE DISTRICT OF COLUMBIA

2

3    United States of America,      ) Criminal Action
                                    ) No. 21-cr-567
4                   Plaintiff,      )
                                    ) INITIAL APPEARANCE
5    vs.                            ) AND ARRAIGNMENT
                                    )
6    Charles Bradford Smith,        ) Washington, DC
     Marshall Neefe,                ) September 16, 2021
7                                   ) Time:  1:35 p.m.
                    Defendants.     )
8    _____

9        TRANSCRIPT OF INITIAL APPEARANCE AND ARRAIGNMENT
                          HELD BEFORE
10          THE HONORABLE JUDGE ZIA FARUQUI
               UNITED STATES MAGISTRATE JUDGE
11   _____

12               A P P E A R A N C E S

13   For Plaintiff:          KELLY SMITH
                             DOJ-USAO
14                           555 Fourth Street, NW
                             Washington, DC  20530
15
     For Defendant Smith:     PETER COOPER
16                           Peter A. Cooper
                             400 Fifth Street, NW
17                           Suite 350
                             Washington, DC  20001
18
     For Defendant Neefe:     JOSEPH CONTE
19                           Law Office of J.R. Conte
                             400 Seventh St., N.W., #206
20                           Washington, D.C. 20004

21   Pretrial Services:      Masharia Holman

22   Proceedings reported by audio recording.
     _____
23
     Transcribing Court Reporter:
24                           Janice Dickman, RMR, CRR, CRC
                             United States Courthouse, Room 6523
25                           333 Constitution Avenue, NW
                             Washington, DC  20001

```
 1                THE COURTROOM DEPUTY:  This is criminal case 21-567,

 2    Defendant No. 1, the United States of America versus Marshall

 3    Neefe.  The defendant is present by video.  And this matter is

 4    set for an initial appearance and arraignment.

 5                Parties please introduce yourselves for the record,

 6    starting with the government.

 7                MS. SMITH:  Kelly Smith on behalf of the government.

 8                MR. CONTE:  May it please the Court, Joseph Conte on

 9    behalf of Marshall Neefe.

10                MR. MEINERO:  And also Seth Adam Meinero for the

11    government.

12                MS. SMITH:  Your Honor, if I may, are we calling this

13    case with its codefendant matter?  Because that is what I

14    was -- Mr. Meinero was going to join me for that matter, with

15    respect to release conditions.

16                THE COURT:  I think we can just call both now at the

17    same time, although they're obviously going to be different.

18    So Ms. Lavigne-Rhodes, do you want to call the codefendant's

19    case, as well.

20                THE COURTROOM DEPUTY:  Yes, Your Honor.  Also calling

21    criminal case 21-567, Defendant No. 2, the United States versus

22    Charles Bradford Smith.  The defendant is present by video.

23    And this matter is set for an initial appearance and

24    arraignment.

25                Will the parties please introduce yourselves for the
```

1    record, starting with the government.

2           MS. SMITH:  Kelly Smith on behalf of the government,

3    joined by AUSA Seth Meinero.

4           MR. COOPER:  Good afternoon, Your Honor.  Peter

5    Cooper on behalf of Mr. Smith, appearing by Webex video, Your

6    Honor.

7           PRETRIAL SERVICES:  Shay Holman, pretrial services.

8           THE COURT:  Ms. Lavigne-Rhodes can you swear in both

9    defendants, please.

10          THE COURTROOM DEPUTY:  Mr. Smith and Mr. Neefe, can

11   you both raise your right hands.

12          Do you solemnly swear that you will well and truly

13   answer all questions propounded to you, so help you God?

14          Mr. Smith?

15          DEFENDANT SMITH:  Yes.

16          THE COURTROOM DEPUTY:  Mr. Neefe?

17          DEFENDANT NEEFE:  Yes.

18          THE COURTROOM DEPUTY:  Thank you.

19          THE COURT:  You can put your hands down.  You can

20   start with -- can you help me pronounce your name?  Is it Neefe

21   or Neefe?  How do I pronounce your name, sir.

22          DEFENDANT NEEFE:  That is Neefe, sir.

23          THE COURT:  Okay.  Great.  So, Mr. Neefe, do you

24   understand that, as reviewing the record, that you've already

25   had a detention hearing previously.  And, so, here I want to

1    focus on going through a couple things.

2          First, Mr. Conte, as I understand it, the defendant

3    is requesting for the appointment of counsel.  I wanted to know

4    if you had any reason or facts that you can -- reason to think

5    that the defendant is not eligible or any facts that you can

6    support indicating that he is ineligible -- eligible or

7    ineligible for appointment of counsel?

8          MR. CONTE:  Your Honor, to my knowledge, prior to his

9    incarceration his income was lower than the cutoff for what is

10   traditionally a CJA appointment and (intelligible)

11   incarcerated, he has no ability to pay attorney fees.

12         THE COURT:  Great.  Thanks so much.  Mr. Neefe, I'm

13   going to appoint Mr. Conte to represent you in this matter.  I

14   think it is appropriate to do so, given the fact that you're

15   currently incarcerated, as well as the facts that have been

16   proffered to me.  I think that it's important, as you know, you

17   have a right to counsel and to have someone appointed.

18         Mr. Conte is a private lawyer.  However, for his

19   public service under the Criminal Justice Act, the court pays

20   for him to represent defendants.  I'm so grateful for Mr. Conte

21   to be available and to represent you in this matter.

22   Mr. Neefe, I'll be speaking to Mr. Conte primarily, but, of

23   course, if you have any questions or concerns, please do chime

24   in and say anything.  I'll give you time with him and make sure

25   there's time later today where he is able to contact you.

1    Okay, Mr. Neefe?

2              DEFENDANT NEEFE:  Yes.  Thank you, Your Honor.

3              THE COURT:  Great.  Mr. Conte, I want to confirm that

4    your client is -- consents to this proceeding going forward by

5    audio and video in light of the pandemic, pursuant to the CARES

6    Act?

7              MR. CONTE:  Yes, Your Honor.

8              THE COURT:  Okay.  Great.  Thanks so much.  Given

9    that I've now appointed you and there are no conditions of

10   release, I believe the next thing to do is to arraign your

11   client on the indictment.  I wanted to know if you had a chance

12   to speak with him about it?

13             MR. CONTE:  I have, Your Honor.  He understands the

14   nature of the charges.

15             THE COURT:  Great.  And so can we go ahead with the

16   arraignment now?

17             MR. CONTE:  Yes, Your Honor.  He has gone through the

18   indictment as well.

19             THE COURT:  Great.  Thank you.

20             Mr. Neefe, arraignment is an important, albeit a

21   short proceeding.  It's an opportunity for you, as a person who

22   is presumed innocent, to officially state that on the record.

23   So I next will review with you the charges that are in the

24   indictment, then I'll ask Mr. Conte if he's waiving formal

25   reading and how you plead as to that.  I understand you've

1    already been advised of the indictment, but I will still

2    re-review this with you.

3            You're charged with ten counts in the indictment,

4    along with the codefendant who is charged with seven.  As to

5    you -- well, Count 1 applies to both of you, is one count of

6    conspiracy to obstruct an official proceeding, in violation of

7    18 U.S.C. 1512(k).  It carries with it a maximum term of

8    imprisonment of up to 20 years in jail, a fine of up to

9    $250,000, or both.  In addition, the Court could impose a term

10   of three years of supervised release.

11           That does not mean that's the sentence that you will

12   get, Mr. Neefe, for a variety of reasons.  Number one, you're

13   presumed innocent.  You're not guilty.  That is what a guilty

14   person would get.  Second, even if you were to be found guilty

15   or plead guilty, ultimately a sentencing district judge would

16   make determinations of -- looking at a variety of factors, what

17   you might get, or any other person might get.  This is just a

18   to warn you and your codefendant what the ceiling for any

19   possible penalty is so that we can understand what's going on.

20           Count 2 is for Mr. Neefe only.  It is one count of

21   obstruction of an official proceeding and aiding and abetting

22   in doing so, in violation of 18 U.S.C. 1512(c)(2) and

23   subsection 2.  It carries with it a maximum term of

24   imprisonment of up to 20 years and fine of up to $250,000, or

25   both.  In addition, the Court could impose a term of up to

1     three years of supervised release.

2           Count 3 is for Mr. Neefe only.  It's one count of

3     civil disorder, in violation of 18 U.S.C. 231(a)(3).  Maximum

4     term of imprisonment up to five years, a fine of up to 250,000,

5     or both.  In addition, the Court could impose up to three years

6     of supervised release.

7           Count 4 is for Mr. Neefe only.  It's a count of

8     assaulting, resisting, or impeding certain officers using a

9     dangerous weapon, and aiding and abetting in doing so, in

10    violation of 18 U.S.C. 111(a)(1) and (b), as well as 18 U.S.C.

11    2.  It carries a maximum term of imprisonment of up to 20

12    years, a fine of up to $250,000, or both.

13          Count 5 is for Mr. Neefe only, as well.  It's one

14    count of entering and remaining in a restricted building or

15    grounds with a deadly or dangerous weapon, in violation of 18

16    U.S.C. 1752(a)(1) and (b)(1)(A).  Carries with it a maximum

17    term of imprisonment a term of up to ten years, fine of up to

18    250,000, or both.

19          Count 6 is for codefendant Smith only.  It's one

20    count of entering and remaining in a restricted building or

21    grounds with a deadly or dangerous weapon, in violation 18

22    U.S.C. 1752(a)(1) and (b)(1)(A).  Carries with it a maximum

23    term of imprisonment of up to ten years, a fine of up to

24    $250,000, or both.

25          Count 7 is for Mr. Neefe only.  It's one count of

1   disorderly and disruptive conduct in a restricted building or

2   grounds with a deadly or dangerous weapon, violation of 18

3   U.S.C. 1752(a)(2) and (b)(1)(A).  Maximum term of imprisonment

4   of up to ten years, fine of up to $250,000, or both.

5          Count 8 is for codefendant Smith only.  One count of

6   disorderly and disruptive conduct in a restricted building or

7   grounds with a deadly or dangerous weapon, in violation of 18

8   U.S.C. 1752(a)(2) and (b)(1)(A).  The maximum term of

9   imprisonment of up to ten years, fine of up to $250,000, or

10  both.

11         Count 9 is to codefendant Smith only.  One count of

12  impeding ingress and egress in a restricted building or grounds

13  with a deadly or dangerous weapon, aiding and abetting in doing

14  so, in violation of 18 U.S.C. 1753(a)(3), (b)(1)(A), and U.S.C.

15  2.  Maximum term of imprisonment of up to ten years, fine of up

16  to $250,000, or both.

17         Count 10 is to Mr. Neefe only.  One count of engaging

18  in physical violence in a restricted building or grounds with a

19  deadly or dangerous weapon and aiding and abetting in doing so,

20  in violation of 18 U.S.C. 1752(a)(4) and (b)(1)(A), and

21  subsection 2.  It carries the same penalty provisions as the

22  previous charge.

23         Count 11 is as to codefendant Smith only.  One count

24  of unlawful possession of a dangerous weapon in Capitol

25  building -- Capitol grounds or building.  Violation of 40

1    U.S.C. 5104(e)(1)(A)(i), with a maximum term of imprisonment of

2    up to five years, a fine of up to $250,000, or both.  In

3    addition, the court could impose up to three years of

4    supervised release.

5            Count 12 is to both defendants.  One count of

6    disorderly conduct in a Capitol building or grounds, in

7    violation of 40 U.S.C. 5104(e)(2)(D).  Carries with it a

8    maximum term of imprisonment of up to six months, a fine up to

9    $5,000, or both.

10           Count 13 is actually codefendant Smith only.  One

11   matter of impeding passage through the Capitol grounds or

12   buildings and aiding and abetting in doing so, in violation of

13   40 U.S.C. 5104 (e)(2)(E), and 18 U.S.C. 2.  Maximum term of

14   imprisonment, up to six months, a fine of up to $5,000, or both.

15           Count 14 is to defendant Neefe only.  It is one count

16   of physical violence in a Capitol ground or building -- Capitol

17   grounds or buildings, in violation of 40 U.S.C. 5104(e)(2)(F).

18   It carries with it the same penalties as the previous provision.

19           Count 15 is to defendant Neefe only.  It is one count

20   of parading, demonstrating, or picketing in Capitol building,

21   in violation of 40 U.S.C. 5104(e)(2)(G).  It carries with it

22   the same penalties as the previous count.

23           Mr. Conte, I want to know as to defendant Neefe, does

24   he waive a formal reading of the indictment?

25           MR. CONTE:  We'll waive a formal reading of the

1    indictment, enter a pleas of not guilty, request a speedy jury

2    trial, and assert his Fourth and Sixth Amendment Rights.

3            THE COURT:  Thank you so much.  I will note for the

4    record officially, Mr. Neefe, I will enter a plea of not guilty

5    as to all counts which you are charged in the indictment.  I

6    will also note that you've requested that your constitutional

7    and statutory rights be asserted.  And I will make sure, it's

8    my job, as well as the district judge in this matter, to ensure

9    that those rights are protected, that you have the opportunity

10   to ensure that you receive a fair and speedy trial.  That's the

11   judge's job here, to do that.  If you feel at any time that

12   you're not getting that, it's your job to tell us that we need

13   to do a better job to make sure that you get that, and we will

14   work diligently (unintelligible).

15           Ms. Smith, is there anything else on this case?

16           MS. SMITH:  No, nothing further with respect to

17   Mr. Neefe.

18           THE COURT:  I will -- Mr. Conte, anything else on

19   your end?

20           MR. CONTE:  No, Your Honor.  Thank you.

21           THE COURT:  I will remind the government and order,

22   as to both defendants, pursuant to rule 5(f) of the Rules of

23   Criminal Procedure, it is (unintelligible) that all exculpatory

24   evidence, as that term is defined in *Brady versus Maryland*,

25   must be turned over to the defendants Mr. Neefe and Mr. Smith.

1    This means evidence that's helpful to your case.  The

2    government can't sit on that.  They have to turn it over to

3    you, your lawyers.  Failure to do so in a timely manner may

4    result in sanctions, including the exclusion of evidence,

5    adverse jury instructions, possible suppression of evidence,

6    dismissal of charges, or contempt proceedings.

7              Anything else, Ms. Lavigne-Rhodes?

8              THE COURTROOM DEPUTY:  No, Your Honor.  Thank you.

9              THE COURT:  Okay.  Mr. Neefe, that's it for us today.

10   Do you have, Ms. Lavigne-Rhodes, the next -- I guess we need to

11   waive the speedy trial rights.  When's the next proceeding?  Do

12   you know, Ms. Lavigne-Rhodes?  Is it District Judge --

13             THE COURTROOM DEPUTY:  The district judge is Judge

14   Lamberth.  And we are waiting transport to D.C. for a next

15   date.

16             THE COURT:  So, Ms. Smith, do you want to just

17   (unintelligible) have 60 days out, or 30 days?  What are you

18   thinking?  So we can just have a control date to use to set the

19   speedy trial request that you might have.

20             MS. SMITH:  Yes, Your Honor.  And I'll be requesting

21   it for both defendants.  I'm sorry, I was a little bit confused

22   about how these two cases are proceeding here today.  But I

23   just want to make sure that I make the correct request here.

24   So we can set this, if the Court is amenable, 60 days out for a

25   controlled status date, with every belief that it will likely

1   be vacated once the district court judge takes up both cases

2   and Mr. Neefe is transported to the District.

3           That would put us on the week of November 15th.

4   Mr. Conte, did you have any particular date?  Or, Mr. Cooper,

5   as well?

6           THE COURT:  It would be great to hear from both, so

7   we can keep them harmonized.  I think, as Ms. Smith had said,

8   likely this will be vacated and you'll get a new date -- that

9   will be joined, as well by Judge Lamberth, but I'll need

10  this -- I'd like to leave them harmonized for now with him.

11          So, Mr. Conte, how do you look that week for a

12  1 o'clock?  Any date that week?

13          MR. CONTE:  That date is fine with me.

14          THE COURT:  All right.  Thank you, Mr. Cooper.

15          Mr. Conte, you're on mute.  Go ahead.

16          MR. CONTE:  That date is fine.

17          THE COURT:  We'll set a controlled status hearing for

18  November 15th, at 1 p.m.

19          Ms. Smith, if you want to make your speedy trial

20  exclusion request as to both defendants?

21          MS. SMITH:  Certainly, Your Honor.  The government

22  requests at this time that the time between today's date and

23  the next hearing date be excluded under the Speedy Trial Act.

24          First, Chief Judge Howell's standing order 21-47

25  tolls some time through October 31st, 2021 in all cases that

1    cannot be tried consistent with the health and safety protocols

2    and limitations related to the COVID 19 pandemic.  Second, the

3    defendants are charged in what is likely the largest criminal

4    prosecution in United States history, and one that the

5    government is continuing to investigate and which over 600

6    defendants have been charged to date.

7         This investigation has generated an enormous amount

8    of evidence, including, for example, over 14,000 hours of

9    Capitol surveillance video, more than 200,000 tips from the

10   public, and over 250 terabytes of total data.

11        The government is investigating and reviewing this

12   and other evidence expeditiously and will begin producing

13   discovery to the defendants consistent with its constitutional

14   and statutory obligations.  Doing so will take time and, thus,

15   the ends of justice are served by tolling time, and those

16   interests outweigh the best interests of the public and the

17   defendant in a speedy trial at this juncture.

18        THE COURT:  Great.  Mr. Conte, any -- do you consent,

19   object, or take no position?

20        MR. CONTE:  Your Honor, we consent.

21        THE COURT:  Mr. Cooper?

22        MR. COOPER:  We consent to that, Your Honor.

23        THE COURT:  All right.  Thank you.  So both

24   defendants, I want you to understand, the government has

25   requested that we pause the clock on which they have to take

1    you to trial.  They have stated their reasons, which I think
2    are appropriate.  I find it's in the interest of justice to
3    exclude this time for the reasons stated by Ms. Smith.  I think
4    doing so outweighs the right for both of you to have a speedy
5    trial, as well as the public to have a speedy trial.
6         This doesn't mean you're giving up this right
7    forever, it just means when you come back, on or before
8    November 15th, you'll have an opportunity again to decide, once
9    your counsels have reviewed the discovery, considered possible
10   disposition, if they say they want to go to trial, then they
11   can say, you know what, Judge Lamberth? no more waiting, we
12   want to get on the clock.  They also have the right to say, you
13   know, maybe it's in your best interest to continue to wait, to
14   review that evidence, explore possible defenses or disposition.
15   So, however, for now, I find it's in the interest of justice
16   and I'll exclude the time.
17        Ms. Smith, anything else as to Mr. Neefe?  Or else
18   we're going to excuse Mr. Conte.  I think that's it.
19        MS. SMITH:  Nothing with respect to Mr. Neefe.
20        THE COURT:  Mr. Conte, anything else from your end?
21        MR. CONTE:  Thank you, Your Honor.  Good day.
22        THE COURT:  Okay great.  The parties are excused on
23   the initial matter here.  Mr. Neefe, good luck to you.  That's
24   it for today.  You'll be back, as I said, November 15th, if not
25   before then, in front of your district judge, Judge Lamberth.

1    MR. CONTE:  Thank you, Your Honor.

2    PRETRIAL SERVICES:  Your Honor, November 15th

3    (unintelligible)?

4    THE COURT:  Yes, that's right.  That is Judge

5    Meriweather.

6    PRETRIAL SERVICES:  All right.  Thank you.

7    THE COURT:  So, next I want to go with -- start back

8    with Mr. Smith.  Mr. Cooper, I want to confirm -- I wanted to

9    confirm if you have any facts that you can provide me with,

10   Mr. Cooper, that confirm that your client is eligible for the

11   appointment of counsel -- or, you know, simply if you have no

12   reason to think that he's not, whatever you can

13   (unintelligible) I can inquire of him.

14   MR. COOPER:  Your Honor, I briefly reviewed the

15   documents from Mr. Smith's initial appearances and I have no

16   reason to believe that he is not eligible for court-appointed

17   attorney.

18   THE COURT:  Was he appointed counsel in the previous

19   jurisdiction?

20   MR. COOPER:  I'm not 100 percent sure about that,

21   Your Honor.

22   THE COURT:  Let me ask, Mr. Smith --

23   DEFENDANT SMITH:  I was.

24   THE COURT:  So based on your attorney's proffer, as

25   well as the appointment of counsel in the previous

1    jurisdiction, I think that you are eligible for the appointment

2    of counsel, and I will appoint Mr. Cooper.

3            Mr. Smith, as I heard me describe earlier, Mr. Cooper

4    is a private lawyer, but through his public service he works

5    with the court, the Criminal Justice Act, to assist the court,

6    making sure we have not just have counsel, but great counsel,

7    to make sure that they have their Sixth Amendment right

8    protected, and so getting experienced counsel who the court can

9    pay to represent you.  So he is who is going to be speaking on

10   behalf of you, but, of course, as always, you can jump in with

11   any questions or concerns.  Okay, Mr. Smith?

12           DEFENDANT SMITH:  Thank you, Your Honor.

13           THE COURT:  Great.  Mr. Cooper, have you -- I don't

14   know if you have mentioned your appearance in this matter, have

15   you?  (Unintelligible.)  Mr. Cooper, you're --

16           MR. COOPER:  Yes, I'm sorry.  I would seek to enter

17   my appearance now, but I could also file something with the

18   court.

19           THE COURT:  I'll just let you go ahead and take off

20   flying, if you want to file that.  I'm putting my email address

21   in the chat box.  I think -- I know you've been on some other

22   matters as well, but you can just make sure to correspond with

23   my law clerks and they'll be sure to then use that to continue

24   to send release conditions or anything else, so we're all on

25   the same page.  Okay?

```
1              MR. COOPER:  Very well.

2              THE COURT:  I want to confirm that your client

3     consents to this proceeding, appearing by audio and video, in

4     light of the pandemic and pursuant to the CARES Act?

5              MR. COOPER:  He does.

6              THE COURT:  Thank you.  Based on that and the release

7     conditions that we do set, we will waive his -- not include his

8     signature, given that he is, obviously, here only virtually,

9     not in person, so cannot sign it.  We will get those conditions

10    to you shortly after the proceeding.  I ask that you -- to the

11    extent you're able to, as soon as possible return them and

12    deliver them to Mr. Smith so that he can then have in writing

13    the conditions of release to which he will be sworn in today.

14             Mr. Smith, we're going to go over the conditions of

15    release.  As I understand, the government is not asking for

16    your detention, but, instead, asks for some conditions of

17    release.  I will hear what those -- what they're requesting,

18    I'll hear what pretrial, the court-appointed agency that will

19    be supervising you, directs, and then I'll hear from Mr. Cooper

20    as to what he thinks is appropriate.  After that I will rule

21    and decide what those conditions of release will be.  I will

22    then have Ms. Lavigne-Rhodes swear you in, after that I'll ask

23    a few questions of you.

24             So, Ms. Smith, why don't you tell us what the

25    conditions of release you're seeking here are?
```

1       MS. SMITH:  Certainly, Your Honor.  The government

2   would be requesting at this time to continue the home

3   detention, with GPS monitoring for Mr. Smith.  In addition to

4   that, we will be asking for most of the standard conditions:

5   That he stay away from Washington, D.C., unless for court,

6   pretrial, or consultation with his attorney; to report to

7   pretrial services from his home jurisdiction as directed, and

8   verify his address, if he has not already done so; participate

9   in all future proceedings as directed; he cannot possess any

10  firearms, destructive devices or dangerous weapons, and; he

11  must not commit any state, local, or federal crimes.

12      Your Honor will notice that I have not asked for the

13  travel restriction, but that is only because he is on GPS

14  monitoring and home detention.

15      I will also request at this time that there be no

16  communication, direct or indirect, outside the presence of

17  counsel, of any codefendants, witnesses, or -- or witnesses

18  related to the underlying case, and; drug testing as directed,

19  and no use of narcotics or unlawful substances unless

20  prescribed by a doctor.

21      THE COURT:  Anything else from pretrial in terms of

22  these conditions, Ms. Holman?  Or defer to the parties and the

23  report?

24      PRETRIAL SERVICES:  Your Honor, I just want to make

25  one clarification.  Ms. Smith stated that he's currently on

1    home detention with GPS monitoring.  According to the release

2    conditions that we received from the Middle District of

3    Pennsylvania, he's on home detention, but it's with radio

4    frequency.  And I just want the Court to understand the

5    clarification.

6          When it is home detention, radio frequency only

7    monitors when they leave and enter the house, versus GPS, which

8    tracks every movement.  So I just wanted to clarify that he's

9    currently on radio frequency, not GPS.

10         THE COURT:  I appreciate you clarifying that

11   Ms. Holman.  That is important.  Thank you.

12         Ms. Smith, are you okay with him staying on radio

13   frequency?  I mean, given that this is a courtesy supervision,

14   that's what that jurisdiction wanted.  Or do you want to see if

15   you can change that?

16         MS. SMITH:  Mr. Meinero, AUSA Meinero, are you

17   amenable to radio frequency?

18         MR. MEINERO:  Thank you, Ms. Smith and Your Honor.  I

19   think that's fine.  So the government would not object to

20   maintaining that condition.  Thank you.

21         THE COURT:  Okay.  Thank you.  That's my inclination,

22   that the supervising district, you know, we will be looking at,

23   they seem to think that's sufficient.  That's helpful.  But

24   thank you.  I appreciate you, Mr. Meinero.  I'm sorry to put

25   you both on the spot on that, on the distinctions between the

1     different types of monitoring.

2          Mr. Cooper, I'm now happy to hear from you.  Any

3     questions about the conditions of release as requested by the

4     government?

5          MR. COOPER:  Your Honor, I know they are the

6     (unintelligible) of some these things.  My only concern is the

7     whole confinement.  I'll keep this just very briefly.  I

8     understand the government's general concerns with respect to

9     all the defendants that have been released in these matters.  I

10    just don't think -- I think the concerns the government

11    legitimately has would be -- would be adequately handled by

12    high intensity supervision, rather than home confinement.  So

13    just ask the court to consider that.

14         THE COURT:  Okay.  Great.  So, just, again, I want to

15    make sure we are clear, because the pretrial (unintelligible)

16    by them when I'm unclear.  I don't want to conflate the terms,

17    although in my mind they are similar.  They're not home -- the

18    home incarceration is to only leave for court, and that here

19    this is home detention which allows the defendant to leave --

20    is the defendant employed, Mr. Cooper?  Do you know?  Or I can

21    inquire of Mr. Smith.

22         DEFENDANT SMITH:  I'm currently looking for

23    employment.

24         THE COURT:  Okay.  Great.  And, so, Ms. Holman, I

25    know that home detention allows a person to leave for their

1    job.  Does that encompass, as well, looking for a job?  Or how

2    does that work, Ms. Holman?  Or is that just up to the Court to

3    sort of --

4          PRETRIAL SERVICES:  The Court would need to state

5    that he is allowed to leave to seek employment.

6          THE COURT:  Okay.  And help me out here?  I think, as

7    I -- can you help me with the other distinctions?  That it

8    allows you to go to religious services to --

9          PRETRIAL SERVICES:  It's for employment, education,

10   religious services, medical, any substance abuse or mental

11   health, visit with attorney and court appearances.

12         THE COURT:  Great.  Got it.  So, Mr. Cooper, I just

13   want to confirm, given that the government's asking for that

14   intermediate, and if I -- I'll hear from Mr. Meinero, I don't

15   know if he's going to accept it, and from Ms. Smith -- but if I

16   modify that to also include the request to be able to look for

17   employment, do you still have concerns with home detention

18   being too severe?

19         MR. COOPER:  I think that's more reasonable, Your

20   Honor.

21         THE COURT:  I think -- I agree that there is a big

22   difference, and I note (unintelligible) incarceration and

23   detention.  Mr. Meinero and Ms. Smith, normally we do allow

24   people to go to employment, obviously going to employment

25   requires getting there.  So, what about including the request

1    for employment, but also looking for employment?  I'll warn

2    Mr. Smith that that does not mean just, you know, joy traveling

3    around, whatever, but it has to be confined and only for the

4    specific purpose of looking for employment.  Is that fine by

5    you?

6            MS. SMITH:  Your Honor, I would just request that at

7    least notice be provided to pretrial, to the extent he would

8    like to leave his home.  While I can appreciate that the

9    defendant wants to seek employment, of course, I would imagine

10   he is not going to be going to several interviews a day.

11   Perhaps he might be, but to the extent that he is looking for

12   employment, I would just request that he at least, at the very

13   least, notice be made to pretrial services in that

14   circumstance.

15           THE COURT:  I think that's very reasonable, given how

16   broad the, sort of, idea of looking for employment is.  And,

17   so, although I had -- include that.

18           So, Ms. Smith, if you can do me a favor, could you

19   re-read, then, the conditions of release, so make sure that we

20   have them all?  And I can include that sort of distinction.

21   Don't worry about the looking for employment, I'll handle that,

22   but everything else.

23           MS. SMITH:  I appreciate that very much, Your Honor.

24   So we would be requesting for home -- we would be requesting

25   home detention, and that would be with the radio monitoring as

1       previously entered in the arresting jurisdiction; that the

2       defendant stay away from Washington, D.C. unless for court,

3       pretrial, or consultation with their attorney; to report to

4       pretrial services as directed and verify their address; to

5       participate in all future proceedings as directed; cannot

6       possess any firearms, destructive devices or dangerous weapons;

7       must not commit any state, local, or federal crimes; no

8       communication, direct or indirect, outside the presence of

9       counsel, with any codefendants or witnesses related to the

10      underlying case; drug testing as directed, and; no use of

11      narcotics or unlawful substances unless prescribed by a doctor.

12              THE COURT:  Great.  And then, as -- I will modify the

13      request for home detention to also include that the defendant

14      may leave his residence, after first giving notice to pretrial

15      services, to search for employment.

16              Mr. Smith, I'm going to remind you, you're to be very

17      careful.  And I'm sure you understand that, you've seen a

18      codefendant who is currently incarcerated.  I know and you know

19      you do not want to end up there.  Mr. Cooper is going to do

20      everything to make sure that you don't, which is great.  But

21      just make it easy for me; let's not get in that situation.  You

22      know, if you're just -- just make sure you're only leaving to

23      actually go for a real employment, to look for employment.

24      Because, if not -- and you've heard the government -- that

25      they're going to be careful about that and if they think that

1    they're not there, they may make a request to detain you, and I

2    don't want to be in that position.  I don't think that's to

3    your benefit, as I know you know, and -- but, you know,

4    obviously I want you to find a job; that's good for you and

5    it's good for everybody else.

6              So keep working hard to find that employment, but

7    just be very careful to not leave without first giving notice

8    to pretrial services.  Okay, Mr. Smith?

9              DEFENDANT SMITH:  Understood, Your Honor.

10             PRETRIAL SERVICES:  Your Honor, I apologize, but I

11   want to -- the wording, since he's on home confinement, he

12   cannot leave without permission.  So I don't want to set him up

13   by using the wording "give notice."  He has to formally request

14   permission to go to seek any type of employment or submit an

15   application or any type of interview.  So, he cannot leave the

16   house until he's granted permission.

17             THE COURT:  Okay.  And so that's for --

18             PRETRIAL SERVICES:  Seeking employment.

19             THE COURT:  Right.  But how about for, like,

20   religious or going to medical appointment?  Does he have to --

21             PRETRIAL SERVICES:  He has to get permission.

22             THE COURT:  Okay.  So it's permission for all of

23   that, for everything under those conditions.

24             PRETRIAL SERVICES:  Yes.

25             THE COURT:  Okay.  Thank you so much.

1          Mr. Smith, do you understand that your pretrial

2    services agent -- you need to first request from them and then

3    they will then -- Ms. Holman, correct me -- it's not the Court

4    then, it's just the pretrial services agent who will give that

5    permission, right?

6          PRETRIAL SERVICES:  Correct, Your Honor.

7          THE COURT:  And he is under courtesy supervision, is

8    that correct?

9          PRETRIAL SERVICES:  He will be, yes, Your Honor, with

10   Middle District of Pennsylvania.  And, also, there was a report

11   that there were firearms in the home.  So we're requesting that

12   the firearms be removed from the home.

13         DEFENDANT SMITH:  They have been removed.

14         THE COURT:  They've been removed, Mr. Smith, is that

15   right?

16         DEFENDANT SMITH:  Yeah, we have paperwork for who

17   they were transferred to and everything.

18         THE COURT:  Thank you so much.

19         PRETRIAL SERVICES:  Okay.  That paperwork will just

20   need to be submitted to Middle District, if it hasn't already

21   been done.

22         THE COURT:  Great.  Mr. Smith, have you already --

23   you may not have already sent that over.  But, if not, you'll

24   send that over?

25         DEFENDANT SMITH:  Yes.  Yes.

1           THE COURT:  Great.  Thanks so much.  Thanks for being

2    on point.  I appreciate that.

3           So, Mr. Smith, I want to make sure you understand the

4    conditions of release because there's been a lot of back and

5    forth.  As you can see, it's hard for me, and I'm the judge, to

6    always sort out what's what because it's complicated.  And so

7    you understand now that there now are all these ability --

8    there's ways that you can get out of your home detention, but

9    to do that you have to seek permission from your pretrial

10   services officer, who is the person in the Middle District of

11   Pennsylvania who is already supervising you, it sounds like.

12          Does that make sense, Mr. Smith?

13          DEFENDANT SMITH:  Yes, Your Honor, I understand.

14          THE COURT:  Okay.  Great.  Follow the conditions of

15   release.

16          DEFENDANT SMITH:  Yes, Your Honor.

17          THE COURT:  Great.  I just want to give you a quick

18   warning, I don't -- what would happen if you did violate the

19   conditions of release:  If you violate any condition, you can

20   face a bench warrant, the revocation of your release, you can

21   be held pending trial and face contempt charges.  A few of them

22   I want to focus on in particular, two special -- two of the

23   conditions are very special and important.  Obviously, you have

24   to follow them all, but these ones are especially important

25   because there additional penalties.  So, if you commit a crime

1    while on release, you face the same penalties I just listed,

2    but you could face a longer sentence for committing a crime

3    while on release.  In addition, the requirement that you show

4    up for future hearings, it's pretty easy to do given we're on

5    Zoom and, hopefully, we'll stay that way, but if not, it's

6    going to be in person.  But for now we continue to have it

7    remotely.  If you don't show up, you can face those same

8    penalties, as well as a new charge for failure to appear.

9           Do you understand the consequences of what might

10   happen if you fail to follow through on the conditions of

11   release, Mr. Smith?

12          DEFENDANT SMITH:  Yes, Your Honor, I understand.

13          THE COURT:  Great.  Ms. Lavigne-Rhodes can you swear

14   the defendant in to the conditions of release?

15          THE COURTROOM DEPUTY:  Mr. Smith, please raise your

16   right hand.

17          Do you solemnly swear to abide by the conditions of

18   your release as set forth by this Court, so help you God?

19          DEFENDANT SMITH:  Yes.

20          THE COURTROOM DEPUTY:  Thank you.

21          THE COURT:  Great.  And so, Mr. Cooper, I want to

22   make sure I understand, that for the next hearing, are you

23   seeking it to be a preliminary hearing or does the defendant

24   waive that preliminary hearing and we're just going to have a

25   status hearing?  Sorry.  He's already been indicted.  Disregard

1        that.

2               The next hearing is a status hearing, set for

3        November 15th.  We're obviously going to try to get --

4               THE COURTROOM DEPUTY:  The 30th for Mr. Smith.

5        November 30th at 1:30.

6               THE COURT:  He has a date?

7               THE COURTROOM DEPUTY:  Yes.

8               MS. SMITH:  It's actually September 30th, before

9        Judge Lamberth, I believe.

10              THE COURTROOM DEPUTY:  Yes, that is correct.

11              THE COURT:  Okay.  I got you.  Well, it's up to you,

12       Mr. Cooper, if you want to try to go on that date or if you

13       want to take the time to get your discovery, you can tell --

14       you're welcome, off line, to communicate with Judge Lamberth's

15       courtroom deputy and see if you want to just stick with a date

16       after the codefendant gets here.  I mean, that's entirely up to

17       and to Judge Lamberth.

18              But since you already have a date, you may just want

19       to appear and you can let Judge Lamberth know we'd made a

20       speedy trial exclusion through mid November.  I would just

21       encourage you to talk to Mr. Meinero off line and you all can

22       follow up with Judge Lamberth.

23              But, for now, obviously, you should be planning to

24       appear on the September 30th date.  Does that make sense,

25       Mr. Cooper?

1          MR. COOPER:  It does make sense.  Just a little

2     confused about why we have a separate date -- all I know is --

3          THE COURT:  I didn't think of it.  I guess Judge

4     Lamberth -- I mean, he just -- we don't know right now.  You

5     know, some folks are getting moved here quicker than others.

6     Obviously, it's not too far, but I think that must have been

7     why, he just wanted to get something on the book, even though

8     the codefendant --

9          MR. COOPER:  (Unintelligible) September 30th date

10    (unintelligible) Judge Lamberth.

11         THE COURT:  What time was that, Ms. Lavigne-Rhodes?

12         THE COURTROOM DEPUTY:  At 1:30.

13         THE COURT:  Okay.  Great.  We've made the Rule 5

14    advisement, we made a speedy trial exclusion, well past

15    September 30th.

16         Anything else, Ms. Smith, from your end?

17         MS. SMITH:  Nothing further from the government, Your

18    Honor.  Thank you very much.

19         THE COURT:  Great.  Mr. Cooper?

20         MR. COOPER:  Your Honor, I just want to double check,

21    for filing the notice of appearance, I just want to check, the

22    case number is 21-00567?

23         THE COURT:  That's right.

24         MR. COOPER:  Okay.  Thank you, Your Honor.

25         THE COURT:  Great.  Ms. Holman, anything else from

1      your end?

2                PRETRIAL SERVICES:  Nothing from pretrial, Your

3      Honor.

4                THE COURT:  Okay.  Ms. Lavigne-Rhodes?

5                THE COURTROOM DEPUTY:  No, Your Honor.  Thank you.

6                THE COURT:  Okay.  Great.  So, Mr. Smith, you need to

7      appear on that date, the September 30th date, as discussed.  Of

8      course, Mr. Cooper may speak with Ms. Smith and Mr. Meinero,

9      and as well as Judge Lamberth, and decide they want to push it

10     out later.  But he'll be the one to advise you.  But just make

11     sure you're planning to appear that date for now.  Okay?

12               DEFENDANT SMITH:  Okay.  Thank you, Your Honor.

13               THE COURT:  Absolutely.  Good luck to you.  The

14     parties are excused.

15               Sorry.  Let me go -- I apologize.  We started the

16     arraignment, but we didn't actually formally finish it.  So

17     let's go back and do that.

18               Mr. Cooper, I've reviewed all of the charges that are

19     in the indictment.  I want to confirm that your client waives

20     formal reading of the indictment, or is he seeking --

21               MR. COOPER:  No, Your Honor, we waive formal reading

22     of the indictment, reserve all of Mr. Smith's constitutional

23     rights, including right to speedy trial.

24               THE COURT:  Great.  Thank you so much.  I will --

25     we'll waive formal reading of the indictment and the defendant,

1     as -- we'll enter a plea of not guilty as to all counts in the

2     indictment.  He has asserted his constitutional, as well as

3     statutory rights.

4          Mr. Smith, as you heard me say earlier, this is your

5     opportunity, as a presumed innocent person, the arraignment,

6     it's so important to put it on the record that you are not

7     guilty, and that's, in fact, what we'll do as to all the

8     charges that I outlined earlier, that are associated with you,

9     as well as I told you the maximum penalties associated with

10    that.  And so we will go ahead and enter a plea of not guilty.

11         Ms. Lavigne-Rhodes, anything else from your end?

12         THE COURTROOM DEPUTY:  No, Your Honor.  Thank you.

13         THE COURT:  Okay.  Great.  At this time the parties

14    are excused.  Thank you so much.  Good luck to you, Mr. Smith.

15    Please do follow the conditions of release.

16         DEFENDANT SMITH:  Thank you, Your Honor.

17         MR. MEINERO:  Thank you, Your Honor.

18                         *   *   *

19

20

21

22

23

24

25

```
 1                         CERTIFICATE

 2       I do hereby certify that the foregoing is a true, correct

 3   and complete transcript of the audio-recorded proceedings in

 4   this matter, audio recorded on September 16, 2021, and

 5   transcribed from the audio recording to the best of my ability,

 6   and that said transcript has been compared with the audio

 7   recording.

 8                         Dated:  December 29, 2022

 9

10                         /s/_____

11                         Janice Dickman
                           Official Court Reporter
12                         333 Constitution Avenue
                           Washington, DC  20001
13                         202-354-3267

14

15

16

17

18

19

20

21

22

23

24

25
```